**In the Matter of John PENROD and Alyce J. Penrod, Debtors–Appellees.**

**Appeal of FINANCIAL INSTITUTIONS LIQUIDATION CORPORATION, formerly known as Mutual Guaranty Corporation, successor in interest to the Clinton County Farm Bureau Cooperative Association Credit Union.**

No. 94–3072.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1995.

Decided March 22, 1995.

Mark R. Wenzel (argued), Jeffrey E. Ramsey, Hopper, Wenzel & Galliher, Indianapolis, IN, for Financial Institutions Liquidation Corp.

Daniel J. Skekloff (argued), Scot T. Skekloff (argued), Hoffman, Thompson, Skekloff, Rogers & McNagny, Fort Wayne, IN, for John L. Penrod, Alyce J. Penrod.

Before POSNER, Chief Judge, ROVNER, Circuit Judge, and MORAN, Chief Judge.*

POSNER, Chief Judge.

This appeal raises an issue of bankruptcy law that one might have supposed had been settled long ago. It is whether, when a plan of reorganization makes provision for the payment of a secured creditor's claim but does not say whether the creditor's security interest (lien) is extinguished, the security interest survives, in accordance with the old saw that "liens pass through bankruptcy unaffected."

Hog farmers named Penrod executed a promissory note to Mutual Guaranty Corporation (actually to its predecessor, but we can ignore that detail) for $150,000, secured by the Penrods' hogs. A year later, the Penrods filed for bankruptcy under Chapter 11, owing Mutual Guaranty $132,000. Mutual Guaranty filed a proof of claim in the bankruptcy proceeding. The Penrods, neither objecting to the claim nor questioning the validity of Mutual Guaranty's lien, filed a plan of reorganization which designated Mutual Guaranty as a "Class 3 creditor"—in fact as the only Class 3 creditor. Class 3 creditors, the plan states, "will be paid in full, with interest at the rate of eleven percent (11%) per annum. Payments to this Class shall be paid on a monthly basis commencing sixty (60) days after Confirmation. Furthermore,

said payments shall be based upon a seven (7) year amortization." That is all that the plan, or the order confirming it, says about Mutual Guaranty's interest.

Shortly after the plan went into effect, the Penrods' hogs became infected with "pseudorabies" virus, a disease of the reproductive system that causes the females infected with it to miscarry. Hogs so stricken cannot be kept for breeding purposes; all they are good for is food (human food, we note with some anxiety). So the Penrods sold their hogs for slaughter—without remitting the proceeds to Mutual Guaranty, as the security agreement accompanying the promissory note had required. Mutual Guaranty brought suit in a state court to enforce a lien in the proceeds. The Penrods responded by asking the bankruptcy court to hold Mutual Guaranty in contempt for violating the order confirming the plan of reorganization, which the Penrods claim extinguished Mutual Guaranty's lien. The bankruptcy court agreed that the lien had been extinguished and enjoined (the court's term was "precluded," but as far as we can tell it meant the same thing) Mutual Guaranty from attempting to enforce it. The district court affirmed.

■ A secured creditor can bypass his debtor's bankruptcy proceeding and enforce his lien in the usual way, which would normally be by bringing a foreclosure action in a state court. This is the principle that liens pass through bankruptcy unaffected. *Long v. Bullard*, 117 U.S. 617, 620–21, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886); *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *In re James Wilson Associates*, 965 F.2d 160, 167 (7th Cir.1992). If the creditor follows this route, the discharge in bankruptcy will not impair his lien. *Dewsnup v. Timm, supra*, 502 U.S. at 416–17, 112 S.Ct. at 778; *In re Tarnow*, 749 F.2d 464 (7th Cir.1984). Alternatively, he may decide to collect his debt in the bankruptcy proceeding, and to this end may file a proof of claim in that proceeding. 11 U.S.C. § 501(a). He will do this if he is undersecured, for in that case merely enforcing his lien would not enable him to collect the en-

* Hon. James B. Moran of the Northern District of Illinois.

tire debt owed him. His only chance of recovering any part of the amount by which the debt exceeds the value of the lien would be to share in the distribution of the debtor's estate to the unsecured creditors. 11 U.S.C. § 506(a); *In re Tarnow, supra,* 749 F.2d at 465.

A secured creditor may be dragged into the bankruptcy involuntarily, because the trustee or debtor (if there is no trustee), or someone who might be liable to the secured creditor and therefore has an interest in maximizing the creditor's recovery, may file a claim on the creditor's behalf. 11 U.S.C. §§ 501(b), (c); *In re Lindsey,* 823 F.2d 189, 191 (7th Cir.1987). He may participate in the bankruptcy in order to try to get the automatic stay (11 U.S.C. § 362(d)) lifted to the extent of allowing him to enforce his lien; for the stay applies to the enforcement of liens. He may want to participate in the bankruptcy proceeding (and so may decide to file a claim) simply because he wants to make sure that the debtor's estate is not administered in a way that will diminish the value, as distinct from threatening the existence, of his lien. *In re CMC Heartland Partners,* 966 F.2d 1143, 1147 (7th Cir.1992).

The secured creditor does not, by participating in the bankruptcy proceeding through filing a claim, surrender his lien. But this is not to say that the lien is sure to escape unscathed from the bankruptcy. We have mentioned the automatic stay. If the secured creditor's claim is challenged in the bankruptcy proceeding and the court denies the claim, the creditor will lose the lien by operation of the doctrine of collateral estoppel. 11 U.S.C. § 506(d); *In re Tarnow, supra,* 749 F.2d at 465–66. He may be forced in the plan of reorganization to swap his lien for an interest that is an "indubitable equivalent" of the lien. 11 U.S.C. § 1129(b)(2)(A)(iii); *In re James Wilson Associates, supra,* 965 F.2d at 172. And in some circumstances he may even be compelled to surrender his lien without receiving *anything* in return. See 11 U.S.C. §§ 1126(d), 1129(a)(10), (b)(1). And, of course, he can consent to its discharge. The right is implicit in 11 U.S.C. § 1126, and is anyway obvious. It is a frequent element of a plan of reorganization, as we are about to see.

Nothing we have said so far is controversial, and we can take one more step without inviting controversy. A plan of reorganization can expressly preserve preexisting liens, such as that of Mutual Guaranty in this case. 11 U.S.C. § 1123(b)(1). Conversely, it can expressly abrogate some or all of those liens with the full consent of the lienholders; and this is common. A reorganization alters the capital structure of the bankrupt enterprise. Bondholders and other creditors, along with shareholders, exchange their notes, claims, and shares for new securities in the reorganized firm. For recent examples, see *Sullivan & Long v. Scattered Corp.,* 47 F.3d 857, 859 (7th Cir.1995); *In re Envirodyne Industries, Inc.,* 29 F.3d 301 (7th Cir.1994). Bondholders often give up their bonds and associated security agreements in exchange for common stock in the reorganized corporation, thus exchanging a secured for an unsecured interest. By now it should be clear that like most generalizations about law, the principle that liens pass through bankruptcy unaffected cannot be taken literally.

The question we must decide in this case is whether preexisting liens survive a reorganization when the plan (or the order confirming it) does not mention the liens. What in other words is the default rule when the plan is silent? We acknowledge this to be a difficult question. Liens are property rights and the forfeiture of such rights is disfavored. But when lienholders participate in a bankruptcy proceeding, and especially in a reorganization, they know that their liens are likely to be affected, and indeed altered. The issue here, moreover, is what the proper rule for interpreting silence is rather than in what circumstances a lien can be taken away from someone who has expressed his desire to retain it.

We have concluded that the default rule for secured creditors who file claims for which provision is made in the plan of reorganization is extinction and is found in the Code itself. Section 1141(c) provides with immaterial exceptions that "except as provid-

ed in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor." The term "interest" is not defined in the Code, but a lien is defined as an interest in property, 11 U.S.C. § 101(37), and there is no doubt that a security interest is an interest, and it is defined as a "lien created by an agreement." 11 U.S.C. § 101(51). So section 1141(c) must cover liens, *In re Arctic Enterprises, Inc.*, 68 B.R. 71, 79 (D.Minn.1986), and must mean, therefore, that unless the plan of reorganization, or the order confirming the plan, says that a lien is preserved, it is extinguished by the confirmation. This is provided, we emphasize, that the holder of the lien participated in the reorganization. If he did not, his lien would not be "property dealt with by the plan," and so the section would not apply. One could argue that the quoted phrase should be equated to "property of the estate," defined in section 541 to include "all legal or equitable interests of the debtor in property *as of the commencement of the case*" (emphasis added), and that at the start of the bankruptcy proceeding the liens of the secured creditors are not the debtor's property—which indeed they are not. *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.1984); *In re Interstate Motor Freight System*, 86 B.R. 500, 505 (Bankr.W.D.Mich.1988). But the suggested equation is not especially plausible. Property dealt with by the plan is property dealt with by the plan, whether it was part of the debtor's estate when bankruptcy was first declared or was tossed into the pot later. As we have said, secured creditors commonly give up their preexisting liens for other interests in the reorganized firm. A plan of reorganization that does this "deal[s] with" the liens. Or does it? For it could be argued that the plan in this case dealt with the secured creditor's *claim*, but not with its *lien*. But this interpretation would be inconsistent with the rest of section 1141(c)—that the property dealt with by the plan is, after confirmation of the plan, to be "free and clear of all claims and interests of creditors" (and others). On the view pressed by Mutual Guaranty, the assets of the reorganized

entity would continue to be burdened by secured creditors' claims by virtue of their liens even if the plan made provision for those claims.

Our suggested interpretation reconciles the language of section 1141(c) with the principle, which we have pointed out cannot be maintained without careful qualification, that liens pass through bankruptcy unaffected. They do—unless they are brought into the bankruptcy proceeding and dealt with there. The interpretation makes practical sense as well. It lowers the costs of transacting with the reorganized firm, thus boosting the chances that the reorganization will succeed. By studying the plan of reorganization a prospective creditor of or investor in the reorganized firm can tell whether any liens that creditors whose interests in the new entity are defined in the plan may have had against its bankrupt predecessor survive as encumbrances on the assets of the new firm. The cases that support a contrary interpretation are cases in which the courts were, we respectfully suggest, mesmerized by a formula ("liens pass through bankruptcy unaffected"). E.g., *Relihan v. Exchange Bank*, 69 B.R. 122 (S.D.Ga.1985); *United Presidential Life Ins. Co. v. Barker*, 31 B.R. 145 (N.D.Tex.1983); *In re Eakin*, 153 B.R. 59 (Bankr.D.Idaho 1993). They are none of them appellate cases, and there are plenty of cases that take our view. E.g., *In re Arctic Enterprises, Inc., supra*, 68 B.R. at 80; *In re Johnson*, 139 B.R. 208, 216 (Bankr.D.Minn. 1992). Oddly, none of the cases on either side is an appellate case, the ones cited by Mutual Guaranty being readily distinguishable. The secured creditor in *In re Tarnow, supra*, did not participate in the reorganization, except to file a late claim against the debtor. The bankruptcy court disallowed the lien because the claim was late—an excessive punishment—not because the plan of reorganization had dealt with the property constituted by the creditor's lien. It had not; in fact no plan had yet been confirmed. Nor had the plan in *Estate of Lellock v. Prudential Ins. Co.*, 811 F.2d 186, 188–89 (3d Cir. 1987), made provision for the secured creditor; the debtor had never even listed the property subject to the lien as an asset of the estate. In *General Electric Credit Corp. v.*

*Nardulli & Sons Inc.,* 836 F.2d 184, 188–89 (3d Cir.1988), the plan denominated the creditor as a "secured creditor" and explicitly recognized its security interest. *In re Simmons,* 765 F.2d 547 (5th Cir.1985), not cited by Mutual Guaranty—no doubt because it did not involve a plan of reorganization or cite section 1141(c)—is nevertheless its best case. It arose under an analogous provision of the Code, 11 U.S.C. § 1327(c), which governs plans under Chapter 13—a counterpart to Chapter 11, only for individuals rather than firms. *Simmons* relied heavily on our decision in *Tarnow,* but *Tarnow* did not involve the interpretation of a plan of reorganization: there was none. For other grounds of distinction between *Simmons* and the present case, see *In re Wolf,* 162 B.R. 98, 108 n. 16 (Bankr.D.N.J.1993).

■ There is nothing to Mutual Guaranty's suggestion that our interpretation raises a question under the due process or takings clauses of the Fifth Amendment because a lien is property within the meaning of the clause. It is, *United States v. Security Industrial Bank,* 459 U.S. 70, 76–77, 103 S.Ct. 407, 411–12, 74 L.Ed.2d 235 (1982), but Mutual Guaranty could have protected it by appealing from the order confirming the plan of reorganization. We recognize that since the law was not clear with respect to the survival of the lien of a creditor who is provided for in the plan without mention of his lien, Mutual Guaranty may not have realized when the plan was adopted that its lien was in jeopardy. Conceivably this might give Mutual Guaranty an equitable defense to the complete extinction of the lien, but it has not presented such a defense. It has staked its all on persuading us that its lien survived the bankruptcy proceeding intact.

AFFIRMED.