**In the Matter of Tristram COFFIN, Debtor/Appellant,**

v.

**MALVERN FEDERAL SAVINGS BANK, Creditor/Appellee.**

No. 95–CV–3143.
Bankruptcy No. 93–11587.

United States District Court,
E.D. Pennsylvania.

Dec. 6, 1995.

Benson Zion, Jeffrey S. Wilson, Benson Zion & Associates, Bryn Mawr, PA, for Plaintiff.

Mark D. Phillips, West Chester, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

The issue in this appeal from the United States Bankruptcy Court for the Eastern District of Pennsylvania concerns whether certain liens survive a bankruptcy proceed-ing. For the reasons that follow, we will reject the arguments advanced by Appellant and affirm the Bankruptcy Court's ruling.

### BACKGROUND

The appellant and debtor in this matter, Tristram Coffin (the "Debtor"), was the own-er of two residential properties in Chester County, Pennsylvania: one in Birchrunville and the other in Phoenixville. Over the course of 15 months between June, 1988 and September, 1989, the Debtor entered into three separate loan transactions with the ap-pellee, the Malvern Federal Savings Bank ("Malvern"), each of which was secured by a mortgage on one of the Debtor's properties. The first mortgage secured a note in the principal amount of $110,000 and was record-ed against the Debtor's Birchrunville proper-ty. The second and third loans were in the amounts of $100,000 and $15,000, respective-ly, and were secured by liens on both proper-ties.

By December of 1989, the Debtor was in arrears on all three loan obligations. As a result, after providing the Debtor with notice of its intent to foreclose, Malvern filed a complaint in the Court of Common Pleas of Chester County, in which it sought fore-closure on the second mortgage only. Mal-vern did not proceed with suit on any of the other notes or foreclose on its remaining mortgage interests. When the Debtor failed to respond to the complaint, the Court of Common Pleas awarded default judgment to Malvern on January 10, 1991. The judgment was in the total amount of $127,688.18, repre-senting the outstanding amount of indebted-ness then due on the second mortgage.

On March 18, 1993, the Debtor filed a voluntary petition in the Bankruptcy Court under Chapter 13 of the Bankruptcy Code. On July 23, Malvern filed a proof of claim in which it set forth the arrearage amounts on the three mortgages. Together with the at-torneys' fees awarded in connection with the foreclosure action on the second mortgage, the total amount submitted in the proof of claim was $124,503.40. This figure repre-sented the arrearage amount, and not the Debtor's total indebtedness. The Debtor

filed an amended plan on September 15, setting forth the arrearage amount on the first mortgage, $43,592.30. Malvern did not object to the amended plan, which was confirmed by the Bankruptcy Court on October 19. Meanwhile, on June 8, the Bankruptcy Court ordered the sale of the Birchrunville property. In accordance with the confirmed plan, the Trustee disbursed to Malvern proceeds from the sale in the total amount of $156,342.27.

On June 23, 1994, Malvern filed a Motion for Relief from the Automatic Stay. A hearing was convened on September 1. After Malvern made an offer of proof to which the Debtor did not object, the Bankruptcy Court ordered that (1) the issue of the stay be continued, (2) the Debtor make monthly protection payments to Malvern in the amount of $650.00, and (3) the Debtor be allowed to submit an amended plan to account for the remaining liens. The Debtor later countered with his own motion, in which he asked the Bankruptcy Court to (1) strike Malvern's Motion for Relief from the Stay, (2) vacate the order requiring him to make protection payments, (3) order Malvern to disgorge proceeds from the sale of the Birchrunville property exceeding the amount set forth in the proof of claim and/or the Chester County Common Pleas Court's foreclosure judgment, and (4) direct Malvern to extinguish its remaining liens on his property. The Debtor argued that he was entitled to the requested relief as a result of the preclusive effects of the confirmed plan, the proof of claim, and the foreclosure judgment.

The Bankruptcy Court consolidated the presentation of the two motions, and convened a hearing on December 1. The Debtor submitted a brief in the period following the hearing, attached certain exhibits relating to the foreclosure judgment issued by the Chester County Court of Common Pleas, and argued that the documents reflected the extent of Malvern's secured claim. Malvern objected to the inclusion of these exhibits, arguing that the evidentiary record was closed at the December 1 hearing. On January 9, 1995, the Bankruptcy Court issued an opinion and order denying Malvern's motion for relief from the stay and denying the Debtor's motion to dismiss except as it related to the lifting of the stay. *In re Coffin,* No. 93–11587 (Bankr.E.D.Pa. Jan. 9, 1995) (*"Coffin I"*). In so ruling, the Bankruptcy Court declined to consider the attached exhibits, noting that the record had been closed at the conclusion of the hearing and that a request to reopen the record for the consideration of additional evidence must be made by motion. *Coffin I,* slip op. at 1 n. 1. Moreover, the Bankruptcy Court held that since an "order of confirmation is res judicata as to the rights and liabilities of both the debtor and creditors," *id.* at 7, Malvern's claim in the bankruptcy proceeding was fully satisfied when it received the proceeds from the sale of the Birchrunville property. On the other hand, since its remaining liens survived the bankruptcy proceeding and were valid and enforceable, *id.* at 11, Malvern could still "pursue its state law remedies, including foreclosure." *Id.* at 15.

On January 19, the Debtor filed motions asking the Bankruptcy Court to admit the evidence relating to the foreclosure judgment and to reconsider its ruling regarding the validity of the liens. After a hearing, the Bankruptcy Court issued an opinion and order denying both motions. *In re Coffin,* No. 93–11587 (Bankr.E.D.Pa. Apr. 13, 1995) (*"Coffin II"*). Regarding the motion to admit additional evidence, the Bankruptcy Court noted that the Debtor failed to provide any explanation as to why the materials were not submitted at the December 1 hearing. Moreover, the Bankruptcy Court held that the material was irrelevant, since "the amount of [Malvern's] secured claim was allowed in Coffin I as the Debtor urged." *Coffin II,* slip op. at 4. With respect to the Debtor's bid to achieve the termination of the liens, the Bankruptcy Court reiterated its holding in *Coffin I:* "that a claim can be discharged while the lien may survive." *Id.* at 8.

The Debtor submitted the instant appeal with this Court on May 28, 1995, offering two arguments in favor of reversal. The first is that the Bankruptcy Court erred when it concluded that the mortgage liens survive the bankruptcy proceeding. The Debtor's second theory, as we understand it, is as

follows. He first contends that the Bankruptcy Court abused its discretion by refusing to consider the evidence relating to the Chester County mortgage foreclosure judgment. He further asserts that pursuant to the doctrine of merger, all of Malvern's "mortgage liens merged in [its] mortgage foreclosure action." Appellant's Brief at 19. Thus, the argument continues, since the foreclosure judgment is preclusive, it defines the full extent of the Debtor's indebtedness. And when the judgment was satisfied with the proceeds from the sale of the Birchrunville property, all of the liens were extinguished. The Debtor therefore contends that the liens should be extinguished and the amount paid in excess of the judgment should be returned to him. The linchpin of the Debtor's argument is thus the merger doctrine: unless the first and third liens were somehow "merged" into the judgment regarding the second mortgage, the judgment is immaterial as to the first and third liens and the Debtor's theory collapses. We will address the Debtor's arguments in turn, applying a clearly erroneous standard to the Bankruptcy Court's factual findings and a plenary standard to its conclusions of law. *In re Siciliano,* 13 F.3d 748, 750 (3d Cir. 1994).

## DISCUSSION

### A. *Survival of the Liens*

■ The Debtor's most persuasive contention is that the Bankruptcy Court's confirmation of the reorganization plan operated to extinguish all the liens Malvern held on the Debtor's property. In ruling against the Debtor on this issue, the Bankruptcy Court relied on the Third Circuit's opinion in *Estate of Lellock v. Prudential Ins. Co.,* 811 F.2d 186 (3d Cir.1987), a case in which the court recognized the general rule that "although an underlying debt is discharged in bankruptcy, the lien created before bankruptcy against property to secure that debt survives." *Id.*

at 188 (citation omitted). The Third Circuit relied on 11 U.S.C. § 506(d)[1] and its legislative history, which indicate that the subsection was enacted to permit liens to pass through the bankruptcy proceeding unscathed. *Id.*

For his part, the Debtor calls our attention to the Seventh Circuit's recent opinion in *In re Penrod,* 50 F.3d 459 (7th Cir.1995). There, the secured creditor filed a proof of claim covering the entire debt. The confirmed plan that later emerged allowed for the payment of the secured creditor's claim, but was silent on the issue of whether the lien was therefore extinguished. Thus, the issue for the court was whether the preexisting lien survives the bankruptcy proceeding when the confirmation plan calls for the payment of the entire debt, but fails to mention the lien. Looking to the Bankruptcy Code, the court concluded that the rule "for secured creditors who file claims for which provision is made in the plan of reorganization is extinction." *Id.* at 462. To support its holding, the court considered § 1141(c), which provides in relevant part that "except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor." 11 U.S.C. § 1141(c). Thus, the court concluded that liens generally pass through bankruptcy unaffected, "unless they are brought into the bankruptcy proceeding and dealt with there." *Penrod,* 50 F.3d at 463.

■ Likewise, the Debtor before us argues that the confirmed plan operated to extinguish the liens at issue. The over-arching difficulty we have with this argument and the Debtor's reliance on *Penrod,* however, is that the proof of claim and the confirmed plan in the present case addressed the arrearage amounts, and not the entire debt secured by the liens. Thus, while Malvern was a participant in the bankruptcy, it did

---

1. The subsection provides as follows:
    (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
    (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
    (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.
11 U.S.C. § 506(d) (1993).

not attempt to collect its entire debt through the bankruptcy proceeding. The liens in question were not "property dealt with by the plan" for § 1141 purposes, and as a result, we conclude that the *Penrod* decision is largely inapplicable here. Moreover, we recognize that we are bound by the Third Circuit's decision in *Lellock* and its holding that a lien which has not been disallowed or avoided survives the bankruptcy proceeding. Accordingly, we must reject the Debtor's argument.

### B. *Doctrine of Merger*

 The Debtor's second argument, one which we can dispose of in short order, compels us to consider the doctrine of merger and determine its applicability to the matter at hand. As we noted above, the Debtor contends that all of Malvern's liens "merged," pursuant to the doctrine, in the mortgage foreclosure action, and were extinguished when the judgment was satisfied. Thus, while the Debtor argues that the Bankruptcy Court should have admitted evidence of the mortgage foreclosure judgment, and that the amount set forth in the judgment preclusively establishes the extent of the Debtor's indebtedness, these arguments are of little legal consequence unless the doctrine of merger applies here.

 Under Pennsylvania's doctrine of merger of judgments, the terms of the mortgage are merged into the foreclosure judgment so that they no longer provide a basis for determining the rights and obligations of the parties. *In re Stendardo,* 991 F.2d 1089, 1095 (3d Cir.1993) (citing *In re Presque Isle Apartments,* 112 B.R. 744, 747 (Bankr.W.D. Pa.1990)). Accordingly, Malvern concedes that the second mortgage claim must be measured in accordance with the foreclosure judgment. The Debtor's argument, however, attempts to extend the applicability of the doctrine to include any and all claims that Malvern might have brought against him. In other words, the Debtor appears to argue that all possible claims, including foreclosure

actions on the first and third mortgages that Malvern could have initiated, merged into the foreclosure judgment so that the judgment defines the total extent of his liability.[2] Unfortunately, for the Debtor, there is simply no legal support for such a broad construction of the doctrine; none of the cases cited by the Debtor supports the result he urges upon the Court. Accordingly, we conclude that the doctrine of merger is not applicable here, and as a result, we must reject the Debtor's theory.

### CONCLUSION

Having considered and rejected the Debtor's arguments in favor of reversal, we will affirm the decisions of the Bankruptcy Court.

---

2. The Debtor has added to record on appeal the evidence regarding the mortgage foreclosure judgment. Malvern has filed a motion to strike those documents from the record. Given our ability to dispose of this appeal without examining the disputed documents, however, we need not consider the motion. Accordingly, the motion will be denied as moot.