216 B.R. 686 (1997)
In re SMITH AND KOURIAN, A General Partnership, Charles H. Smith and Richard D. Kourian, Debtors.
Charles H. SMITH, Plaintiff/Appellant,
v.
MORTGAGE FUNDING CORPORATION, Defendant/Appellee.
BAP No. NH 96-078, Bankruptcy No. 91-13239-JEY, Adversary No. 96-1163.
United States Bankruptcy Appellate Panel of the First Circuit.
December 23, 1997.
Before HAINES, HILLMAN and BOROFF, Bankruptcy Judges.

Memorandum of Decision
HAINES, Bankruptcy Judge.
Appellant Charles H. Smith characterizes the matter before us as concerning the bankruptcy court's partial dismissal of an adversary proceeding aimed at obtaining redress for Mortgage Funding Corporation's ("MFC") initiation of a state court foreclosure action "notwithstanding the terms" of a confirmed Chapter 11 plan. Because we conclude that MFC's post-confirmation foreclosure action is consistent with the plan, we affirm.

Scope of Review
This appeal presents a challenge to the bankruptcy court's partial dismissal of the appellant's complaint pursuant to Fed. R.Bankr.P. 12(b) and Fed.R.Civ.P. 12(b)(6). We review the lower court's decision de novo. *687 See Mercado-Boneta v. Administracion del Fondo de Compensacion Al Paciente, 125 F.3d 9, 12 (1st Cir.1997). As our court of appeals recently explained:
On appeal, we review[] the granting of a motion to dismiss de novo, applying the same criteria that obtained in the court below. Garita Hotel Ltd. v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir.1992). We must accept the complaint's allegations as true, indulging all reasonable inferences in favor of [the appellee]. Id. Dismissal is proper only if it is clear that no relief could be granted, under any theory, "under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984); Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir.1994).
Kiely v. Raytheon Company, 105 F.3d 734, 735 (1st Cir.1997) (first alteration original).

Discussion
1. Background.[1]
A. The Lay of the Plan.
On October 31, 1991, Smith & Kourian, a general partnership of which Charles H. Smith and Richard D. Kourian were partners, filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of New Hampshire. On January 31, 1992, Messrs. Smith and Kourian voluntarily filed individual Chapter 11 petitions. On May 31, 1992, the bankruptcy court substantively consolidated the three cases.[2] The consolidated reorganization proceedings comprehended a multifaceted business enterprise, including a marina on Lake Winnepesaukee and over twenty other properties.
The debtors' schedules were less than complete. Although they listed all their creditors, the debtors did not itemize comprehensively the liens and mortgages encumbering their assets. Neither before nor during the bankruptcy proceeding did the debtors search titles or take other steps to resolve the uncertainty created by their incomplete schedules.
Among the consolidated estate's properties was Maine real estate owned by Smith (the "Kennebunkport Property"). The Kennebunkport property was subject to mortgage liens in favor of BankEast and Sylvia Block. BankEast's mortgage secured a $70,000.00 loan that it had extended to Smith in 1984. Nowhere did Smith's schedules reflect that the $70,000.00 loan was secured by the BankEast's Kennebunkport Property mortgage.
In addition to its Kennebunkport Property mortgage, BankEast held a consensual lien on Smith & Kourian's marina's boat inventory to secure a $130,000.00 loan it extended to the partnership in 1988.
After the bankruptcy case(s) commenced, but long before confirmation, the Federal Deposit Insurance Corporation ("FDIC") succeeded to BankEast's claims. Throughout the course of reorganization proceedings, FDIC/BankEast and the debtors focused their attention on the claim secured by the marina's inventory. FDIC/BankEast's timely-filed proof of claim referred only to the $132,924.70 loan secured by boat inventory. It made no mention of the Kennebunkport Property mortgage or the indebtedness it secured.
FDIC/BankEast and the debtors extensively negotiated the plan's treatment of the partnership inventory loan. Although the debtors modified the plan to assuage FDIC/BankEast's concerns about treatment of the inventory claim, neither side paid any attention to the plan's treatment of the Kennebunkport Property mortgage.
*688 B. The Plan.
Aside from treating the boat inventory claim, the debtors' plan did not articulate specific treatment of other FDIC/BankEast claims. As to the plan's treatment of liens that were not otherwise addressed expressly, Article XIV provided:
Unless expressly set forth in the Plan, all liens and attachments of record encumbering any assets administered under the Plan (specifically including, but not limited to, the Surrendered Properties, the Operating Businesses, and the Retained Assets) shall be deemed discharged as of the Confirmation Date, and all creditors holding such liens shall execute the necessary documents to release such liens after the Confirmation Date, upon request in writing of any of the Plan Proponents or the Trustee. The property administered under this Plan shall be free and clear of all liens except those expressly preserved in the Plan. If any such creditor fails to execute such documents, their [sic] lien shall be discharged under the Plan as of the Confirmation Date.
(Appellant's Appendix Item 16 at 23) [hereinafter "App."].[3]
The plan expressly preserved Sylvia Block's mortgage on the Kennebunkport Property, as well as the liens of several other creditors, e.g., Fortune Bank and Landings Management Association, Inc., on other identified properties. In addition, in Class 18's treatment of the debtors' respective interests, the plan provided that "Charles Smith shall retain his interest in the Sarasota, Florida property and the Kennebunkport property (subject to any mortgage liens)." (Id. at 18) (emphasis added).
C. The Best Laid Plans. . . .
In 1995, nearly three years following confirmation, Banc One Asset Management Corporation ("Banc One"), as servicing agent for FDIC/BankEast, contacted Smith. Banc One demanded payment on the note secured by the Kennebunkport Property mortgage. Smith refused, contending that all liability had been discharged with the Chapter 11 plan's confirmation. In May 1996, FDIC/BankEast assigned the note and mortgage to MFC. MFC demanded payment  again without success.
On July 31, 1996, MFC initiated suit in Maine state court, seeking to foreclose the Kennebunkport Property mortgage and asking that Smith be adjudged personally liable on the related note.
On November 7, 1996, at Smith's behest, the bankruptcy court reopened the bankruptcy case and Smith filed an adversary complaint seeking to enjoin MFC from collecting on the note and foreclosing on the mortgage. The complaint also sought damages and sanctions for MFC's violation of 11 U.S.C. §§ 524(a) and 1141(d)(1) and the confirmation order. The Chapter 11 plan, the confirmation order, the FDIC/BankEast proof of claim, and MFC's state court complaint were appended to, and incorporated in, Smith's complaint. MFC moved for dismissal of those counts pertaining to its foreclosure of the Kennebunkport Property mortgage.
After hearing oral argument, the bankruptcy court granted the motion, relying on the pleadings and the record of the Chapter 11 proceeding.[4] The court's order left the balance of Smith's complaint undisturbed.
*689 Smith moved for, and was granted, leave to appeal. See Fed.R.Bankr.P. 8003. The bankruptcy court granted Smith's motion for stay pending appeal. See Fed.R.Bankr.P. 8005.

Discussion
Relying on In re Penrod, 50 F.3d 459 (7th Cir.1995), Smith contends that the bankruptcy court erred when it determined that the Kennebunkport Property mortgage survived the confirmation order because the debtors had not "made it clear" in the plan that the mortgage was to be extinguished. We cannot agree.
True enough, Penrod articulated "careful qualifications" to the "old saw" that "liens pass through bankruptcy unaffected," id. at 461, 463, but it did so in a context very different from the case before us today. The Penrod debtors owed Mutual Guaranty $132,000.00, secured by a lien on livestock, viz hogs. Mutual Guaranty filed a secured proof of claim for that amount. Without objecting to Mutual Guaranty's claim, the debtors filed a Chapter 11 plan which classified Mutual Guaranty separately and provided that its claim would be paid in full, with 11% interest. The plan called for monthly payments, amortized over seven years, but made no mention of Mutual Guaranty's livestock lien. See id. at 461. Shortly after confirmation the hogs became sick, necessitating their sale and slaughter. Mutual Guaranty brought suit in state court to enforce its lien on the Penrods' pigs' proceeds. The debtors contended that their plan had extinguished the lien and sought redress in the bankruptcy court. The bankruptcy court, district court, and the Seventh Circuit sided with the debtors. See id. at 461-62.
After elucidating the alternatives available to secured creditors, and the ways in which their liens might be preserved, altered, abrogated, or otherwise affected by reorganization proceedings, see id., the Seventh Circuit framed the issue before it: "The question we must decide in this case is whether preexisting liens survive a reorganization when the plan (or the order confirming it) does not mention the liens. What in other words is the default rule when the plan is silent?" Id. at 462. The court's conclusion was that the "default rule for secured creditors who file claims for which provision is made in the plan of reorganization is extinction and is found in the Code itself." Id. (citing § 1141(c)).[5]See also Northeast Office and Commercial Properties, Inc. v. Smith Valve Corp. (In re Northeast Office and Commercial Properties, Inc.), 178 B.R. 915, 926 (Bankr.D.Mass.1995) (section 1141(c) operates to extinguish liens that the plan does not expressly preserve).
Our case is not Penrod. The only "default" present here is that of both parties' inattention to the FDIC/BankEast Kennebunkport Property mortgage throughout the reorganization proceedings. Whatever might be said about that shared oversight, about the operation of FDIC/BankEast's non-comprehensive proof of claim or the parties' underlying "intentions," the plan was not silent about the mortgage's treatment. It expressly stated that Smith would retain the Kennebunkport property "subject to any mortgage liens." (App. Item 16 at 18) (emphasis added).
Thus, we need not resolve issues surrounding the question whether liens "pass through" bankruptcy under "silent plans" or whether they are "extinguished" by them. *690 MFC's lien was ushered through bankruptcy, albeit without fanfare, by the very terms of the debtors' plan. The plan unambiguously provided for the mortgage's preservation. Upon confirmation, the plan bound the parties. See Doral Mortgage Corp. v. Echevaria (In re Echevarria), 212 B.R. 185, 188 (1st Cir. BAP 1997) (absent successful appeal, a confirmed Chapter 13 plan binds creditors); Bank of New Hampshire v. Donahue (In re Donahue), 183 B.R. 666, 667 (Bankr.D.N.H.1995) ("Just as the Court would hold a creditor accountable to the terms of a reorganization plan, it must also hold the debtor accountable to the agreements as well."); DiBerto v. Meadows at Madbury, Inc. (In re DiBerto), 171 B.R. 461, 471 (Bankr.D.N.H.1994) (confirmed plan is the equivalent of a final judgment, res judicata principles apply to bar "actions on issues that should have been or could have been raised during the confirmation process," as well as issues actually raised); Citizens Bank of Americus v. Kennedy (In re Kennedy), 79 B.R. 950, 952 (Bankr.M.D.Ga. 1987) ("Section 1141 of the Bankruptcy Code means what it says and not only are the Creditors bound by the confirmed Plan, but the Debtors are also so bound."). See generally Monarch Life Ins., Co. v. Ropes & Gray, 65 F.3d 973 (1st Cir.1995) (discussing doctrines of judicial estoppel and res judicata in context of jurisdictional challenge to an unappealed order confirming Chapter 11 plan).
Because the confirmed plan expressly preserved "any mortgages" encumbering the Kennebunkport Property, the bankruptcy judge correctly dismissed those counts of Smith's complaint seeking to enjoin MFC's foreclosure of the Kennebunkport Property mortgage and seeking damages or sanctions on account of its having done so.[6]
The bankruptcy court's order is AFFIRMED.
SO ORDERED.
NOTES
[1] Consistent with the standard of review articulated above, we draw the background and facts from Smith's complaint, taking the allegations as true and indulging all reasonable inferences in his favor.
[2] Substantive consolidation effects "the merger of assets and liabilities of two or more estates, creating a common fund of assets and a single body of creditors." In re Molnar Bros., 200 B.R. 555, 560 (Bankr.D.N.J.1996). See generally 4 James F. Queenan et al., Chapter 11 Theory and Practice §§ 24.01 -24.22 (1994) (defining substantive consolidation, exploring requirements, consequences, and related issues). The bankruptcy court exercises its equitable powers, pursuant to § 105(a), when ordering the substantive consolidation of related estates. See In re Molnar Bros., 200 B.R. at 560 n. 6; In re Cooper, 147 B.R. 678, 681 (Bankr.D.N.J.1992).
[3] The order confirming the plan, referencing 11 U.S.C. § 1141(c), similarly provided that "all assets of the Debtors shall be free and clear of all claims and interests of creditors except as provided for in the Modified Plan." (App. Item 18 at 3.)
[4] In reaching its decision the court expressly declined to consider affidavits proffered by Smith and his counsel in opposition to the motion to dismiss. The court thereby kept its inquiry within the parameters of a Rule 12(b)(6) dismissal motion. See Fed.R.Civ.P. 12(b)(6) (providing for summary judgment treatment of Rule 12(b)(6) motion if matters outside the pleadings are presented to and not excluded by the court); Berner v. Delahanty, 129 F.3d 20, 25 n. 3 (1st Cir.1997) (district court may exercise discretion under Rule 12(b)(6) to grant motion to dismiss notwithstanding submission of affidavits in opposition to motion, provided that the court "did not rest its decision in any way on these materials (and, thus, effectively excluded them)"). We also note, though the issue was not raised by the parties, that the court's reference to the record of the Chapter 11 proceeding  a public record, integral to Smith's adversarial complaint and referred to by the pleadings  was well within the bounds of its Rule 12(b)(6) discretion. See e.g., Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir.1996) ("In deciding a motion to dismiss . . . a court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment."); Davis v. Bayless, 70 F.3d 367, 372 n. 3 (5th Cir.1995) ("Federal courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss."); Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993) (observing that courts may consider documents not subject to authenticity disputes, official public records, documents central to the claim, and documents referenced in the complaint when deciding a motion to dismiss).
[5] Section 1141(c) provides:

Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.
[6] We note in passing that this result is fully consistent with Penrod's concern that prospective creditors of a reorganized firm be able to ascertain the post-confirmation status of pre-bankruptcy encumbrances by referring to the plan and confirmation order. See Penrod, 50 F.3d at 463.