In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 21-2681, 21-2682, 21-2687 & 21-2782

IN THE MATTER OF:

RAMON AGUIRRE and BERTHA AGUIRRE,

*Debtors.*

APPEALS OF:

WHEELER FINANCIAL, INC., and JPMORGAN CHASE BANK, N.A.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 18-cv-07915, 19-cv-01232 & 19-cv-01233 — **Martha M. Pacold**, *Judge.*

ARGUED MAY 24, 2022 — DECIDED JUNE 16, 2022

Before EASTERBROOK, WOOD, and BRENNAN, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Litigants' indifference to procedures has made a mess of this bankruptcy proceeding. A $40,000 debt for real estate taxes is the nub of contention, and the litigants must have spent multiples of that sum on legal fees. Bankruptcy Judge Barnes has entered and revised numerous orders, including multiple plans of reorganization. Two district judges have found fault with some aspects of the

bankruptcy judge's orders. But the main problem lies with the litigants.

Ramon and Bertha Aguirre own several properties in northern Illinois. JPMorgan Chase Bank loaned them about $1.3 million on the security of one parcel, a restaurant in Cook County. After the Aguirres stopped paying real estate taxes, Wheeler Financial paid on their behalf and received the right to a tax deed once a redemption period had expired. The Bank could have paid the taxes, or redeemed from Wheeler, and added the amount to the loan in order to protect its interest. Had the Bank done so, none of the events that we must consider would have occurred. But the Bank didn't.

After a few years of "saving" on real estate taxes, the Aguirres stopped paying other debts and filed a bankruptcy petition. They listed a few tax debts but not the ones to Cook County and, derivatively, Wheeler. Indeed, the Aguirres did not list either the County or Wheeler as creditors, and neither was served with notice or a summons. The Bank knew about the unpaid taxes but it, too, failed to ensure that the County or Wheeler was served.

The Aguirres proposed a plan of reorganization that would pay all back property taxes. At this point the tax debts were a matter of record, but no one saw to it that the County or Wheeler was served. The judge approved the plan of reorganization even though the principal Class 2 creditors (the County and Wheeler) did not vote—unsurprising, as they had not been notified. Time passed, the Aguirres did not pay up, and Wheeler finally appeared in the bankruptcy court to ask the judge to lift the automatic stay so that it could go to state court to get a tax deed. Judge Barnes obliged—as did a state judge, who issued the requested deed.

District Judge Norgle reversed and held, among other things, that the stay should have been left in place because the confirmed plan superseded Wheeler's lien even though it had not been paid. 565 B.R. 646 (N.D. Ill. 2017). He remanded for further proceedings. Wheeler dutifully told the state court, which revoked the tax deed—though the suit in Illinois remains pending, and Wheeler hopes to get another tax deed some day. On remand, Bankruptcy Judge Barnes declared the tax deed "void" and approved a revised plan of reorganization, this one calling on the Bank to pay Wheeler about $65,000. More appeals led to a ruling by District Judge Pacold that the state judge's order was not "void": reinstatement of a stay does not retroactively invalidate judicial decisions made while no stay was outstanding. 2021 U.S. Dist. LEXIS 156866 (N.D. Ill. Aug. 19, 2021). Nonetheless, Judge Pacold concluded, the order approving the revised plan and thus knocking out Wheeler's lien is valid, and the state judge's rescission of the deed made any other dispute academic. Both Wheeler and Chase have appealed to this court.

Wheeler observes that it *still* has not been served with process, and it contends that the plan of reorganization therefore does not affect it. If it is not bound by the plan, then its lien passes through the bankruptcy, see *Long v. Bullard*, 117 U.S. 617 (1886); *In re Penrod*, 50 F.3d 459 (7th Cir. 1995), and the plan needs to be re-revised to eliminate all Wheeler-specific clauses. But if that is so then this case would not be over in the bankruptcy court, which would mean that the district court's order is not final and we would lack appellate jurisdiction under 28 U.S.C. §§ 158, 1291. Bankruptcy comprises many disputes that are stand-alone suits outside bankruptcy, and an appeal is permissible if the district court has finally resolved one such dispute. See, e.g., *Bullard v. Blue Hills Bank*, 575 U.S.

496, 501 (2015); *In re Morse Electric Co.*, 805 F.2d 262 (7th Cir. 1986). A final determination of Wheeler's rights under a confirmed plan would qualify for appeal. But if the plan does not affect Wheeler, there's nothing to appeal. The order isn't final if the plan needs more revision, and Wheeler isn't aggrieved by an order that does not affect its rights.

So, to decide whether we have jurisdiction, we need to determine whether the plan of reorganization binds Wheeler. And the answer to that question could dispose of Wheeler's argument that its lien passes through bankruptcy. We think the best way to get a handle on this problem is to lay out a partial timeline of the bankruptcy.

- June 30, 2014: The Aguirres file for bankruptcy.

- July 3, 2014: The Aguirres certify that they've notified their creditors. Despite this certification, Wheeler and the Cook County Treasurer are not notified.

- July 25, 2014: The Aguirres serve creditors (again excluding Cook County and Wheeler) with a notice telling them when proofs of claim are due.

- August 11, 2014: The Cook County tax liability is mentioned for the first time, in an order by Judge Barnes extending the automatic stay and ordering debtors to pay the second installment of their 2013 real estate taxes relating to their Chicago property (this installment is not part of the debt that Wheeler purchased).

- August 12, 2014: The Bank files a response to the Aguirres' motion to make adequate-protection payments. The Bank relates that the Aguirres

haven't paid real estate taxes on the restaurant property in years. An appendix lists the amount of tax liability and identifies Wheeler as the tax debt's purchaser. This appears to be the first notice to Judge Barnes that Wheeler is a creditor—though the Bank does not ensure that Wheeler becomes a party.

- September 26, 2014: Claim bar date for non-governmental creditors. Wheeler naturally does not file a claim.

- November 5, 2014: The Aguirres file their Chapter 11 plan. The Cook County Treasurer's claim is listed under Class 2, but only in vague terms. The plan does not mention Wheeler.

- December 10, 2014: Wheeler files in the Circuit Court of Cook County a petition for a tax deed. It does not name the Bank as a litigant, and the Aguirres, who were served, default.

- December 16, 2014: The Aguirres file an amended plan that lists back taxes on the restaurant as $40,000. This plan identifies both the Cook County Treasurer and Wheeler as creditors for that amount. The Aguirres and the Bank still do not serve Wheeler with process.

- February 10, 2015: The Aguirres file their second amended plan, which again lists Wheeler as a creditor for around $40,000. It remains unserved.

- February 23, 2015: The Aguirres file a Certificate of Service of Class 2 Ballots, certifying that a copy of (1) the ballot, (2) the court's order setting a

hearing in April, (3) the Second Amended Disclosure Statement, and (4) the Second Amended Plan has been sent to Wheeler and various Cook County officers. The Certificate is supposed to say what means of notice will be used, but it does not. It also specifies that the Plan is binding if confirmed, and it gives the recipient the choice to either accept or reject the Second Amended Plan.

- March 1, 2015: Wheeler says that it received the Certificate of Service of Class 2 Ballots "on or about" this date. This is the first time that Wheeler has been served with anything.

- April 4, 2015: A ballot report filed with the bankruptcy court says that Wheeler's vote has not been received. The record does not contain evidence that Wheeler ever voted for or against this plan.

- April 15, 2015: Judge Barnes files a hand-written Plan Amendment adding a provision that requires the Aguirres to pay the debt to Wheeler within 6 months. The plan is confirmed on this date. This amendment apparently was the result of negotiation among the Aguirres, the Bank, and Wheeler—though Wheeler did not file anything in the bankruptcy court.

- October 15, 2015: The Aguirres miss the deadline for paying off Wheeler's debt. The Bank does not step in to pay in their stead.

- November 19, 2015: Wheeler files a Motion for Relief from Stay that treats the Plan as binding on it.

> Wheeler asserts that the Aguirres' "post-confir-mation default … entitles Wheeler to stay relief for 'cause' pursuant to [11 U.S.C.] §362(d)(1)." That statute applies "on request of a party in interest," so by making this motion Wheeler identifies itself as a party. Wheeler also says that "[u]nder the Plan, Wheeler was allowed a 'Class 2' Claim … and was entitled to payment." From here on, Wheeler files many other papers in the bankruptcy court and the district court.

Judges Barnes, Norgle, and Pacold all appear to have assumed that Wheeler has been a party since November 19, 2015, if not earlier. When asked at oral argument whether his client is a party, Wheeler's lawyer said yes—though counsel hedged about when and how this happened, observing that Wheeler was never served with process. Yet while conceding that Wheeler is a party, counsel strenuously contended that Wheeler's lien passes through bankruptcy unaffected, which is possible only if Wheeler is *not* a party and therefore is not bound by the confirmed plan of reorganization. See *Penrod*, 50 F.3d at 461.

To say that this sequence leaves a lot to be desired is an understatement. But it seems safe to conclude, if only because of counsel's concession, that Wheeler is a party, making it bound by the plan unless we reverse. Wheeler did not become a party through the means normally employed for that purpose, but an entity can waive service and consent to party status even though the norms of party-making have not been followed. See, e.g., *Pennoyer v. Neff*, 95 U.S. 714, 735–36 (1878). And a litigant also can waive its right to participate in the voting on a proposed plan of reorganization. Wheeler did not

vote, but it negotiated for better terms, got the terms it sought, accepted the plan's confirmation as a *fait accompli*, and claimed rights under it. Those steps effectively consent to have the lien replaced by a cash payment and waive any entitlement to better or earlier notice.

Wheeler had other means of attacking this plan. It could have contended, for example, that the roughly $65,000 it stands to receive falls short of the "indubitable equivalent" of the tax lien's value. 11 U.S.C. §1129(b)(2)(A)(iii). But Wheeler does not contend that it has been forced to take a haircut, even considering the running of interest on the original $40,000 debt.

Because Wheeler is a party, the plan has been confirmed, and Wheeler has bypassed its principal opportunities to contest the plan, there is nothing more for us to do. The confirmed plan knocks out any entitlement that Wheeler may once have had to obtain a tax deed and foreclose on its lien—knocks it out, that is, if the Aguirres or Chase at last pay as the plan provides, something they should have done seven years ago. As long as it remains unpaid, Wheeler need not dismiss its state-court proceeding, though dismissal will be obligatory once payment has been tendered. The parties have contested many other legal issues, but nothing else need be said to resolve these appeals.

AFFIRMED