**In re Frank G. ANTONINO, Debtor.**

**Frank G. Antonino, Plaintiff,**

**v.**

**Thomas G. Kenny, Defendant.**

**Bankruptcy No. 98–B–02324.**
**Adversary No. 99–A–00586.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Dec. 9, 1999.

See also 1999 WL 615378.

Jonathan Shimberg, Shimberg and Crohn, Chicago, IL, for Plaintiff/Debtor.

Michael K. Desmond, Figiulo & Silverman, P.C., Chicago, IL, for Defendant.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint of Frank G. Antonino (the "Debtor") against Thomas G. Kenny (the "Creditor") which seeks sanctions for violation of the discharge injunction under 11 U.S.C. § 524(a)(2). The Court finds that the Creditor did not violate the discharge injunction by his actions to attempt to collect the debt, which was the result of a post-petition, post-discharge voluntary agreement entered into by the Debtor, and supported by adequate consideration from the Debtor's former spouse, as within the scope of 11 U.S.C. § 524(f). Additionally, the Court dismisses the complaint and en-

ters judgment in favor of the Creditor. The Court grants the Creditor's motion for directed findings under Federal Rule of Bankruptcy Procedure 7052.

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a), formerly known as General Rule 2.33(A), of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. *FACTS AND BACKGROUND*

Most of the facts are not disputed and much of the background has been detailed in a prior decision. *See Antonino v. Kenny (In re Antonino)*, Ch. 7 Case No. 98 B 02324, Adv. No. 99 A 00586, 1999 WL 615378 (Bankr.N.D.Ill. Aug. 5, 1999) (denying the Creditor's motion to dismiss or alternatively for summary judgment). The facts and background found in that decision are incorporated herein by reference and need not be repeated. Similarly, the principal points and arguments of the parties were summarized in the prior Opinion and will not be restated. Thus, familiarity with the prior Opinion is necessary to place the following findings and conclusions in proper context and perspective. The Court denied the Creditor's motion to dismiss or for summary judgment because material issues of fact were drawn in the pleadings regarding whether or not the subject debt was pre-petition or post-petition; whether the Debtor's agreement to pay the debt was voluntary; and whether it was in the nature of a non-dischargeable support obligation for purposes of 11 U.S.C. § 523(a)(5).

At the time the Debtor filed his bankruptcy petition in January 1998, he was embroiled in a contested marital dissolution proceeding with his spouse Jennifer Antonino ("Mrs. Antonino") in the Circuit Court of DuPage County, Illinois (the "State Court"). After the automatic stay of 11 U.S.C. § 362(a) was lifted, and the dissolution proceeding advanced in the State Court, the Debtor was obligated to pay his spouse $3,400.00 per month in unallocated support and maintenance payments out of his monthly income of between $4,000.00—$5,000.00 earned from his practice as a chiropractor. In July 1998, when the Debtor converted his bankruptcy case from Chapter 13 to Chapter 7, he learned that his spouse was suffering from terminal cancer. Her condition rapidly deteriorated and precluded her from working. Mrs. Antonino died on January 5, 1999.

The State Court entered a judgment for dissolution of the marriage on November 30, 1998, and awarded sole custody of the three minor children of the parties to Mrs. Antonino, subject to reasonable visitation by the Debtor, with custody to change to the Debtor upon her demise. *See* Creditor's Exhibit No. 2, p. 3. That judgment reserved ruling on all other issues. *Id.* Both parties were represented by bankruptcy and domestic relations counsel.

Negotiations on the remaining issues continued and on December 14, 1998, culminated in the entry of a supplemental judgment which incorporated an oral settlement agreement reached between the Debtor and Mrs. Antonino. *See* Debtor's Exhibit No. 1 and Creditor's Exhibit No. 1. That agreement was approved by the State Court after the Debtor and Mrs. Antonino testified in support thereof. *See* Creditor's Exhibit No. 3. The agreement provided, in part, that the Debtor was to pay Mrs. Antonino unallocated family support of $5,000.00 per month commencing January 1, 1999, in lieu of the prior interim award of $3,400.00 per month, and to pay the subject debt of $11,600.00 to the Creditor on or before April 1, 1999. *See* Debtor's and Creditor's Exhibit Nos. 1, pp. 3–4.

The Debtor testified before the State Court that he understood the substantive terms of the agreement, including the pay-

ment of the fees to the Creditor; that he could be held in contempt of the State Court for failure to pay as agreed; that he waived his right to a hearing under the applicable Illinois statute regarding such fees; that he was satisfied with the terms of the agreement; that he intended to be bound thereby; and that he entered into the agreement voluntarily. See Creditor's Exhibit No. 3. Neither the Debtor nor either of his attorneys advised the State Court or anyone else at that hearing that they considered the agreement unenforceable.

The Debtor testified before this Court that he was told by counsel that the agreement was not enforceable because no reaffirmation agreement had been entered into and filed with this Court pursuant to 11 U.S.C. § 524(c). The Debtor also testified that the debt was, to his understanding, not in the nature of support. The Debtor stated that he did not consider himself bound by the terms of the agreement. In addition, he testified that he received no consideration for the agreement from Mrs. Antonino on the issues regarding support, maintenance, custody, visitation or property division. Other than maintaining the health insurance for his children, the Debtor has not performed any of the other obligations under the agreement, notwithstanding his stated intentions to the State Court. The Debtor has not taken any action to vacate, set aside or appeal from the supplemental judgment.

Erica Crohn Minchella, bankruptcy co-counsel for the Debtor, also testified. She was of the opinion that the debt to the Creditor was unenforceable because it was not embodied in a reaffirmation agreement filed with this Court. Ms. Minchella thought it was unnecessary to advise Mrs. Antonino or the State Court of her views at the December 14, 1998 hearing because Mrs. Antonino was represented by counsel. Contrary to her client's testimony, Ms. Minchella admitted that there was consideration for the agreement, to which both the Debtor and Mrs. Antonino voluntarily

agreed, to resolve the remaining issues and "to get it over." Ms. Minchella denied that the Debtor's testimony before the State Court and her silence regarding the view that the agreement was unenforceable, absent a reaffirmation agreement, was an attempt to perpetrate a fraud upon the State Court.

Linda Crohn, co-counsel for the Debtor in the State Court dissolution proceeding, testified. She defended the Debtor in connection with the Creditor's petition for adjudication of civil contempt filed against him on April 14, 1999. See Creditor's Exhibit No. 6. This petition was filed after the Debtor failed to pay the debt to the Creditor. On May 12, 1999, at a hearing on the petition, the State Court entered an order which included a finding that the Debtor's obligation to pay the attorneys' fees to the Creditor "was in the nature of support." See Creditor's Exhibit No. 7. Ms. Crohn objected and moved to vacate that order. However, she had not noticed that motion up for hearing in accordance with the applicable local rules of the State Court by the time of the trial before this Court.

The Creditor also testified. He never represented the Debtor or provided him any services, but at all times acted on behalf of Mrs. Antonino through entry of the dissolution judgment and subsequently until her death. Early in the State Court dissolution proceeding, the Debtor was ordered by the State Court to pay $6,000.00 of the Credtior's fees. The Debtor paid these fees. Prior to the agreement embodied in the supplemental judgment, the Creditor made no other request nor received any other order awarding him fees from the Debtor. Thus, during the course of the Debtor's bankruptcy case and through his discharge in November 1998, the Creditor never asserted a fee claim against the Debtor and never filed a proof of claim in the bankruptcy case. The Creditor further testified that Mrs. Antonino gave consideration to the Debtor for the settlement agreement because at the

time it was entered into there were pending and unresolved issues regarding division of property, past due support and maintenance claims against the Debtor, and Mrs. Antonino's claim that the Debtor had dissipated over $200,000.00 of marital property. According to the Creditor, Mrs. Antonino waived these claims under the settlement agreement.

The Creditor stated that the attorneys' fees owed to him by Mrs. Antonino were over $20,000.00. *See* Creditor's Exhibit No. 4. These fees were compromised under the agreement when the Debtor agreed to pay $11,600.00, which then created the debt owed by the Debtor. The Creditor never asked for a reaffirmation agreement from the Debtor regarding the debt. The negotiated fees the Debtor agreed to pay were the only ones the Creditor expected to receive in light of Mrs. Antonino's terminal illness, which precluded her from working. Mrs. Antonino, according to the Creditor, lacked income other than the support payments she received from the Debtor. Thus, the Creditor was of the opinion that the debt was in the nature of support for purposes of § 523(a)(5). He recalled that the State Court insisted on the inclusion in the order of May 12, 1999, that the debt was in the nature of support.

### III. *DISCUSSION*

The Debtor contends that the debt owed by the Debtor to the Creditor should be categorized as a pre-petition claim, at least in part, under 11 U.S.C. § 348(d) because the amount covered the unpaid pre-petition and post-petition attorneys' fees owed by Mrs. Antonino to the Creditor for his legal services to her. The Debtor argues that because the Creditor did not obtain a reaffirmation agreement pursuant to § 524(c), the debt is unenforceable and the Creditor violated the discharge injunction by attempting to collect the debt from the Debtor by the subsequent State Court petition for adjudication of contempt. The Debtor cites *In re Turner,* 208 B.R. 434 (Bankr.C.D.Ill.1997), *aff'd in part and dis-*

*missed in part,* 156 F.3d 713 (7th Cir.1998) and *Smith v. First Suburban Nat. Bank (In re Smith),* 224 B.R. 388 (Bankr.N.D.Ill. 1998) for the proposition that reaffirmations not complying with § 524(c) are void and unenforceable. He cites to *In re Latanowich,* 207 B.R. 326 (Bankr.D.Mass. 1997) for the point that any acts to collect on a debt not properly reaffirmed violate the discharge injunction. Also, he cites *In re Arnold,* 206 B.R. 560 (Bankr.N.D.Ala. 1997) for the proposition that where any part of the consideration for a post-petition agreement is based upon a discharged debt, the agreement must comply with § 524.

The Creditor, on the other hand, contends that the debt arose post-petition, after the discharge issued, when the Debtor and Mrs. Antonino agreed to the terms of the settlement agreement on December 14, 1998. Prior thereto, the only unpaid attorneys' fees that were owed to the Creditor were those owed by Mrs. Antonino. Thus, no pre-discharge agreement was possible between the Debtor and the Creditor as required by § 524(c)(1). Moreover, because the debt was a new obligation, no reaffirmation was needed. According to the Creditor, there was no order, request, application or agreement for the Debtor to pay the fees to the Creditor who had no claim therefor as to the Debtor under 11 U.S.C. § 101(5). The Creditor maintains that he did not have a claim against the Debtor for unpaid attorneys' fees until December 14, 1998, when the Debtor and Mrs. Antonino entered into the settlement agreement, which was several weeks after the Debtor received a discharge. Consequently, the debt was incurred post-petition, post-conversion and post-discharge. Moreover, it was supported by adequate consideration from Mrs. Antonino when she released her other pending claims against the Debtor under the settlement agreement. Therefore, no violation of § 524 occurred because a reaffirmation agreement was neither possible nor necessary.

■ The Court finds that the subject debt was a new, voluntary obligation made by the Debtor post-discharge and was not a pre-petition debt subject to the reaffirmation requirements of § 524(c). There was no claim or a right to payment for any unpaid fees that the Creditor had against the Debtor prior to December 14, 1998 when the settlement agreement was entered into between the Debtor and Mrs. Antonino. The Creditor's unpaid fees owed to him by Mrs. Antonino did not equate to a claim against the Debtor prior to the parties agreeing to the terms of the settlement agreement. The only prior claim for the Creditor's fees in the State Court action had been paid by the Debtor, apparently pre-petition. That undisputed fact is a marked difference from the facts in the cases cited by the Debtor in which the respective creditors all had undisputed and unsatisfied pre-petition claims against those debtors that triggered the necessity for compliance with the reaffirmation requirements of § 524(c).

■ The term "right to payment" is nothing more or less than an enforceable obligation. *Cohen v. De La Cruz,* 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). A "claim" exists for bankruptcy purposes only if the relationship between debtor and creditor contains all of the elements necessary to give rise to a legal obligation under relevant non-bankruptcy law. *In re Chateaugay Corp.,* 53 F.3d 478, 479 (2d Cir.), *cert. denied,* 516 U.S. 913, 116 S.Ct. 298, 133 L.Ed.2d 204 (1995); *United States v. Union Scrap Iron & Metal,* 123 B.R. 831, 835 (D.Minn.1990). However broad definition of "claim" under the Bankruptcy Code is to be interpreted, the definition is not without limits. *Bennett v. Bennett (In re Bennett),* 175 B.R. 181, 183 (Bankr.E.D.Pa.1994). "Debt" is incurred for purposes of the Bankruptcy Code when the debtor first becomes legally obligated to pay. *Alfa Mut. Fire Ins. Co. v. Memory (In re Martin),* 184 B.R. 985, 991 (M.D.Ala.1995), *aff'd,* 101 F.3d 708 (11th Cir.1996). Thus, the debt owed by the Debtor to the Creditor did not arise until it was incurred on December 14, 1998, pursuant to the settlement agreement and the supplemental judgment.

■ A valid, post-discharge contract is established through the existence of some separate consideration for the subsequent agreement. *In re Watson,* 192 B.R. 739, 747 (9th Cir. BAP 1996), *aff'd,* 116 F.3d 488, 1997 WL 330895 (9th Cir.1997). Here, the record shows a postdischarge agreement supported by separate consideration. The Debtor's attorney, Ms. Minchella, admitted that Mrs. Antonino gave the Debtor consideration for his obligations assumed under the settlement agreement. Her testimony corroborated the Creditor's testimony on that point. The testimony of the Creditor and Ms. Minchella was more credible than the Debtor's testimony, wherein he denied receiving separate consideration for the agreement. The Court affords their testimony more credence than the Debtor's testimony given his testimony before the State Court which concealed the fact that he believed the agreement was unenforceable, absent a bankruptcy reaffirmation agreement, even though a reaffirmation agreement was not possible under the time mandate of § 524(c)(1).

In short, the Court concludes that the Debtor had no real intention of complying with the settlement agreement at the time it was made, at least with respect to the debt owed to the Creditor. It is painfully obvious that the Debtor, there as here, testifies in his own self-interest for purposes which serve him, even if he has other contrary beliefs and intentions. The Court also notes that the Debtor testified that he voluntarily entered into the settlement agreement with Mrs. Antonino. This testimony directly contradicts previous allegations made in his pleadings filed with the Court wherein the Debtor claimed his agreement to pay the Creditor's fees was not voluntary. Whether or not there was any attempt by the Debtor and Ms. Minchella to procure the settlement agreement

by fraud or work a fraud upon the State Court should be decided in that forum, not this one.

This Court, however, clearly views the debt as a liability on a claim for purposes of 11 U.S.C. §§ 101(5) and 101(12), which arose and originated post-petition, post-conversion and post-discharge. Thus, it was not discharged under § 727 and the Creditor has not violated § 524(a) by attempting to collect it from the Debtor. To hold otherwise would produce a lamentable result as observed in a notable Seventh Circuit dissent on a different issue where domestic relations law intersects with bankruptcy law: "[t]he Bankruptcy Code as liberalized in 1978 is widely criticized as making bankruptcy an ordinary tool of business planning, but after today it will also be criticized as a tool by which bounders defraud their spouses." *In re Sanderfoot,* 899 F.2d 598, 606 (7th Cir.1990)(Posner, J., dissenting), *rev'd, Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).

The second issue raised by the parties is whether or not the debt is in the nature of support for purposes of § 523(a)(5). The Creditor argues that even if a portion of the debt could be considered in the nature of a pre-petition obligation as a result of § 348(d), the discharge injunction of § 524(a) has not been violated, absent a reaffirmation agreement because that section only implicates a debt that is dischargeable, which excludes non-dischargeable support debts under § 523(a)(5). In contrast, the Debtor argues that a review and application of the ten factors enumerated in *In re Woods,* 561 F.2d 27, 29–30 (7th Cir.1977) shows that the debt is really in the nature of property settlement, rather than a support obligation.

■ On this point, at first blush, the Debtor's arguments with respect to applying the *Woods* factors are much stronger. Most of them favor the Debtor's theory regarding the nature of the debt. But, these factors are not always outcome determinative. Rather, they can only assist the Court in making the determination whether the intent of the divorce court and the parties was to provide support or divide marital property and debts. *Wright v. Wright (In re Wright),* 184 B.R. 318, 321 (Bankr.N.D.Ill.1995). This is not always an easy task and usually not crystal clear because typically the parties have not expressly stated their intentions in the underlying settlement agreement, as was the case here in the supplemental judgment entered on December 14, 1998.

The Creditor testified that the debt was intended to be in the nature of support for Mrs. Antonino, as she had no means of paying the fees owed him. She had no income other than the monthly unallocated support and maintenance payment of $3,400.00 from the Debtor. Her terminal illness and the medication she was taking precluded her from earning any income from her employment. The Debtor, on the other hand, testified that the debt was not intended by him as support for Mrs. Antonino. The intent of the State Court as to whether or not the obligation is or is not in the nature of support is not easily discernable from the State Court record at the time of dissolution proceeding, pre-bankruptcy. Such unascertainable intent of the State Court frequently results from the parties and that court omitting to consider the subsequent bankruptcy implications of the domestic relations outcome because of their focus on non-bankruptcy issues.

■ The interesting fact present here is that the May 12, 1999 order entered by the same State Court judge who approved the settlement agreement, which was embodied in the supplemental judgment, made an express finding that the subject debt "was in the nature of support." *See* Creditor's Exhibit No. 7. Even if that order is the subject of an undecided motion to reconsider, it is a clear indication of the State Court's view of whether or not the debt was a support obligation. The Creditor testified that the State Court directed

that such provision be inserted in the order. Thus, while this issue is not outcome determinative, given the Court's finding that the debt is a new, post-discharge obligation supported by adequate consideration that was not discharged, there is strong and persuasive evidence of the State Court's view that the debt was in the nature of support. The Court affords that language in the order substantial weight, inasmuch as state courts have concurrent jurisdiction to make § 523(a)(5) dischargeability determinations. *See In re Crawford,* 183 B.R. 103, 105 (Bankr.W.D.Va. 1995).

### IV. *CONCLUSION*

For the foregoing reasons, the Court dismisses the complaint and grants the Creditor's motion for directed findings.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.