UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-10826
_____

In the Matter Of: MELVIN DALE KINION;
CHARLOTTE JONES KINION,

                                                    Debtor.

CHASE AUTOMOTIVE FINANCE, INC.,

                                                    Appellant,

                              versus

MELVIN DALE KINION; CHARLOTTE
JONES KINION,

                                                    Appellees.
_____

            Appeal from the United States District Court
                 for the Northern District of Texas
_____

                         March 24, 2000

Before JONES, DUHÉ, and WIENER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

        Chase Automotive Finance, Inc., an auto lender, thought
it had secured a reaffirmation agreement with Chapter 7 debtors for
their Cadillac.  *See* 11 U.S.C. § 524(c).  Instead, six months
later, Chase was informed that not only had the reaffirmation
agreement been disapproved by the court, but the court had voided
Chase's valid lien.  We reverse the judgments of the bankruptcy and

district courts, which approved the abrogation of Chase
Automotive's lien in an extraordinary train of events.

The debtors financed the purchase of a $25,000 Cadillac through Chase in October, 1996. Less than a year later, the Kinions filed a voluntary Chapter 7 petition in bankruptcy and duly notified Chase. The case was processed as a no-asset case, in which creditors are instructed not to file proofs of claim because the trustee determines no unsecured, non-exempt assets are available for distribution. On September 30, Chase forwarded a proposed reaffirmation agreement to the debtors, who signed and returned it to Chase. Counsel for the Kinions, on receipt of the executed agreement, was to see to its filing with the bankruptcy court.

A local bankruptcy rule of the Northern District of Texas (Amarillo Division), is apparently predicated on the assumption that only secured debt should be reaffirmed by debtors. The rule consequently requires that the lender's automotive finance contract and title be attached to the motion for reaffirmation. To comply with this rule, counsel for the Kinions wrote Chase twice seeking copies of the documents.

At the debtors' discharge hearing in January, 1998, the bankruptcy court was informed by appellees' counsel of the reaffirmation agreement and of the absence of security documents concerning the Cadillac.[1] Significantly, the Kinions did not dispute the secured status of the debt on the Cadillac and had

---

[1] The Kinions reaffirmed their debt on a GMAC-financed truck at the same hearing.

listed Chase on their bankruptcy schedules as a secured creditor. Nevertheless, they requested the court to permit them to file the reaffirmation agreement along with a proposed order that would (1) deny the agreement, (2) <u>find the debt unsecured</u>, and (3) allow Chase 30 days to file a motion for rehearing on the matter. The court agreed to sign such an order.[2]

Only three days later, Chase furnished Kinion with the necessary security documents.[3] Debtors' counsel did not turn those documents over to the court. Instead, on February 3, after the bankruptcy case had been closed, the Kinions filed the reaffirmation agreement with the denial order.

On February 10, the court reopened the case *sua sponte*, pursuant to 11 U.S.C. § 350, and signed the order. In its order, the bankruptcy court enjoined Chase from attempting to collect any pre-petition indebtedness from the Kinions personally and from interfering with the Kinions' possession of their property. The Kinions then sent the thirty-day notice concerning the order to Chase at an address different from the one to which their previous correspondence had been directed.[4]

---

[2]    Apparently, this type of order has been entered by the court in numerous bankruptcies .

[3]    The record does not reflect why the debtors did not themselves possess copies of the relevant security documents.

[4]    The February 10 order was mailed only to Chase's address as originally reflected in official bankruptcy court files.

3

On March 17, the Kinions' counsel wrote to Chase demanding that it cease collection efforts and turn over title to the Cadillac. Chase did not file a motion to reconsider the court's order until April 13, and the bankruptcy court found this was too late. The district court affirmed the bankruptcy court's decisions, and this appeal followed.

DISCUSSION

This court reviews the lower courts' findings of fact under the clear error standard and their interpretations of the law *de novo*. Richmond Leasing Co. v. Capital Bank, NA, 762 F.2d 1303, 1307 (5th Cir. 1985).

The upshot of these events is that the debtors made less than a year's monthly payments on their Cadillac, filed bankruptcy, were discharged from personal liability for the debt, and have also been relieved of Chase's lien on the car, even though they have repeatedly conceded that the debt was secured.

The Kinions employ the following reasoning in support of the bankruptcy court's orders. Chase voluntarily "sought out" the bankruptcy court's approval of its proposed reaffirmation agreement with the debtors and thereby subjected itself to the court's further orders. Chase "put the debtors to a choice" whether to reaffirm their debt on the car or discharge the unsecured portion of the debt in bankruptcy while remaining liable for the secured portion. The Amarillo division's unique local rule required Chase to provide copies of the definitive security documents along with

4

the executed reaffirmation agreement. Having taken advantage of the possibility of reaffirmation, Chase failed to comply with the local rule and did not "prove" the validity of its security interest in the Kinions' Cadillac.

According to the Kinions, the court was then justified in reopening their bankruptcy, after discharge had been granted and the case had been closed, in order to "deny" their incomplete reaffirmation agreement and void Chase's automobile lien. The court was led to believe that the Chase loan was effectively unsecured, and hence, it should enjoin post-bankruptcy collection efforts directed at the Cadillac as well as the underlying debt. Although Chase had no prior notice that its lien could be avoided, any procedural defect arising from the lack of notice was allegedly cured by the bankruptcy court's order permitting Chase to move for reconsideration within 30 days. Finally, Chase lost its chance to defend its indisputably valid lien by failing to move timely for reconsideration.

The Kinions' self-serving interpretation of bankruptcy procedure has carried their case to a most unusual conclusion. Ordinarily, if a secured creditor failed to obtain the court's approval for a reaffirmation agreement, the reaffirmation agreement would simply be rejected, and the creditor would retain its lien (if any) on the property.[5] Here, although the Kinions had the lien

---

[5]     As will be seen *infra*, the statute does not require the court's "approval" in most cases.

documents in their possession before the court entered its lien-stripping order, and although the Kinions admitted the secured status of the claim, the court voided the lien. It takes little analysis to demonstrate that this result cannot be squared with the Bankruptcy Code and rules.

First, to the extent that the local bankruptcy rule, applicable only in the Amarillo division in the Northern District of Texas, implies that reaffirmations can only be approved for secured indebtedness, it is contrary to the Bankruptcy Code. The Code permits reaffirmations of unsecured as well as secured debt. The Amarillo division's local rule may not impose a requirement of secured status upon a creditor seeking court filing of a reaffirmation agreement. Moreover, the Code requires neither a court hearing nor court approval if the debtor is represented by counsel. 11 U.S.C. § 524(c) and (d).[6] Obtaining proof of a valid

---

[6] 11 U.S.C. § 524: . . . (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if --
(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;
(2) (A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and
(B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under non-bankruptcy law, or under any agreement not in accordance with the

6

provisions of this subsection;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that --

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of --

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement;

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

(5) the provisions of subsection (d) of this section have been complied with; and

(6) (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as --

(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor.

(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

(d) In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, 1228, or 1328 of this title, the court may hold a hearing at which the debtor shall appear in person. at any such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section and was not represented by an attorney during the course of negotiating such agreement, then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall --

(1) inform the debtor --

(A) that such an agreement is not required under this title, under non-bankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and

(B) of the legal effect and consequences of --

7

security agreement may be important for the debtor's counsel to fulfill his statutory and ethical duties in connection with a reaffirmation. 11 U.S.C. § 524(c)(3). Proof of secured status might also inform the court's admonishment during hearings that are required only for debtors not represented by counsel. 11 U.S.C. § 524(d). But the unsecured status of the debt may not in and of itself prevent a debtor from agreeing to reaffirm. Thus, the local rule's "requirement" that a creditor furnish its security documents could not be dispositive of the court's duty in reaffirmation.

Second, the Kinions err in suggesting that Chase in any way forced them to reaffirm their debt on the Cadillac. The Bankruptcy Code specifies that within thirty days after filing a Chapter 7 petition, "the debtor shall file" a statement of intention with respect to consumer debt secured by property of the estate. 11 U.S.C. § 521(2)(A) & (B).[7] The filing announces the

---

> (i) an agreement of the kind specified in subsection (c) of this section; and
> (ii) a default under such an agreement; and
> (2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this section, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor.

[7] 11 U.S.C. § 521: . . . (2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate --
> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect

8

debtor's intention to retain or surrender the property and, if applicable, to redeem the collateral or reaffirm the debt. <u>Johnson v. Sun Finance Co. (In re Johnson)</u>, 89 F.3d 249, 251 (5th Cir. 1996). By sending the debtors a proposed reaffirmation agreement, Chase was offering them an option under section 521, but it could compel neither their signatures nor performance of the agreement. Indeed, it is clear from the record that the Kinions' counsel felt an ethical obligation to review the reaffirmation agreement carefully before filing it with the court. In any event, Chase could not unilaterally consummate the reaffirmation. The debtors were required by bankruptcy law to choose promptly how they would treat the Cadillac and the associated debt. <u>Their</u> first choice was to reaffirm.

Third, though executed by the parties, the reaffirmation agreement never complied with the Bankruptcy Code and should not have been filed at court. The agreement was not complete "before the granting of the discharge", 11 U.S.C. § 524(c)(1), and it was not accompanied by the required declaration of the Kinions'

---

to the retention or surrender of such property and, if applicable specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

counsel.  11 U.S.C. § 524(c)(3).[8]  Twice flawed as it was, the proposed reaffirmation agreement was unenforceable.

Fourth, why the bankruptcy court thought it should reopen the Kinions' Chapter 7 case in order to "deny" the reaffirmation agreement and strip Chase's lien is hard to discern.  The court had already granted the Kinions a discharge, the trustee had administered their "no asset" case, and the case had been closed. The Bankruptcy Code permits reopening "to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b).[9]  Here, the debtors required no relief from the reaffirmation agreement.  As shown above, there was no enforceable agreement between the Kinions and Chase.  They were in the same position as any other Chapter 7 debtor who is discharged while a creditor retains a lien on the debtor's property: their personal liability for the debt was extinguished, but some rapprochement with the creditor would have to be reached concerning the debtor's continuing lien on the collateral.  To go through the motions of "denying" an ineffective, incomplete reaffirmation agreement was at best futile.  To "reopen" for this purpose, or for the further purpose of voiding Chase's lien, was an abuse of discretion.

---

[8]    *See* note 6 *supra*.

[9]    The court may have believed that it should reopen the case because it was closed before a standard discharge order -- enjoining creditors from seeking to collect discharged debts -- was entered.  Such a purpose is acceptable.  But the reopening could not, under the circumstances described above, serve as a pretext to avoid a lien.

10

Fifth, if at some point the Kinions believed they had grounds to challenge the secured status of Chase's loan, the procedure sanctioned by the Bankruptcy Rules calls for an adversary proceeding. *See* Bankruptcy Rule 7001, *et seq*. An adversary proceeding to determine the validity, priority, or extent of a lien proceeds is a lawsuit, incorporating nearly verbatim most of the Federal Rules of Civil Procedure. The court's order stripping Chase's lien complied with none of the usual procedures. Chase was never served with notice that its lien would be challenged; it never received notice of the hearing date for any such challenge; and no evidentiary hearing was held.[10] The court's allowance of thirty days to file a motion for reconsideration cannot substitute for the before-the-fact protections of creditors' interests embodied in the adversary rules.

Sixth, it cannot be contended that Chase should have been aware that the bankruptcy court's local reaffirmation rule and practice would bring its lien into question and subject it to an *ex parte* lien-stripping order. This court has repeatedly stated that "a secured creditor may remain outside the bankruptcy proceedings until an interested party objects to his allowed secured claim." In re Howard, 972 F.2d 639, 641 (5th Cir. 1992). *See also* In re Simmons, 765 F.2d 547 (5th Cir. 1985) (a Chapter 13 plan may not substitute for an objection to a secured creditor's proof of

---

[10] Adding insult to injury, the Kinions' counsel was actually in possession of the relevant lien documents when he requested the court to enter the lien-stripping order.

11

claim).[11]  *See also* <u>In re Orr</u>, 180 F.3d 656, 660 (5th Cir. 1999) ("Ordinarily, liens and other secured interests survive bankruptcy"), citing <u>Farrey v. Sanderfoot</u>, 500 U.S. 291, 297, 111 S.Ct. 1825, 1829 (1991).[12]  The court could not, consistent with these precedents, utilize the statutory reaffirmation process to invalidate without notice a secured creditor's lien.[13]

Seventh, because the court had no authority to strip Chase's secured interest, its injunctive order preventing Chase from taking steps against the collateral cannot be justified by the Bankruptcy Code either.  A bankruptcy discharge operates as an injunction against the commencement or continuation of an act to collect a pre-petition unsecured debt from property of the debtor. 11 U.S.C. § 524(a).  But the injunction may not prevent a secured

---

[11]  Technically, as the Kinions' case was a no asset case, claims against it were not to be filed by creditors.  Nevertheless, a party could challenge the validity of Chase's lien had it been in the party's interest to do so.  As noted, however, the debtors identified the debt they owed to Chase as "secured" and not "disputed".

[12]  A creditor's liens ride through bankruptcy unaffected unless the Bankruptcy Code clearly permits their modification, e.g. in reorganization cases.  *See* <u>Dewsnup v. Timm</u>, 502 U.S. 410, 420, 112 S.Ct. 773, 779 (1992), citing <u>Long v. Bullard</u>, 117 U.S. 620-21, 6 S.Ct. 917, 918 (1886).  No such provisions of the Bankruptcy Code are applicable to the Kinions' case.

[13]  The Kinions rely heavily on the Seventh Circuit's statement that "the principle that liens pass through bankruptcy unaffected cannot be taken literally." <u>In re Penrod</u>, 50 F.3d 459, 462 (7th Cir. 1995).  <u>Penrod</u> involved a Chapter 11 reorganization and is distinguishable for that reason alone.  <u>Penrod</u> also distinguishes expressly and may well conflict with this court's decision in <u>In re Simmons</u>, *supra*.  <u>Penrod</u>, 50 F.3d at 464.  If it does conflict, we are bound by this court's precedent.

creditor from exercising its legal remedies against the collateral if the secured status of the loan has not been challenged by appropriate and customary bankruptcy procedures. *See* <u>In re Howard</u>, *supra*. The bankruptcy court's injunction against Chase was unauthorized and invalid.

Finally, the bankruptcy court abused its discretion in failing to grant Chase's motion to reconsider. Whether reconsideration was authorized under 11 U.S.C. § 350, Bankruptcy Rule 8015, or by some other device, it should have been granted to correct the procedural errors that led to the unauthorized stripping of Chase's valid lien.

The actions that occurred here do not survive scrutiny under a cursory analysis of applicable bankruptcy law. To the extent that these events were set in motion by the local rule of the Amarillo division, a rule designed in part to limit reaffirmations to secured debt, the rule is plainly inconsistent with the Code and invalid. The judgments of the bankruptcy and district courts, which abrogated Chase's lien, and the injunction against future actions by Chase to recover on its lien, are accordingly reversed.

**REVERSED.**

13