# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 22, 2011

No. 11-40301
Summary Calendar

Lyle W. Cayce
Clerk

In the Matter of:  AMERICAN RICE, INC.,

Debtor.

------------------------------------

SANDBURG FINANCIAL CORP.,

Appellant,

versus

AMERICAN RICE, INC.,

Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC Case No. 2:10-CV-280

Before KING, SMITH, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Appellant Sandburg Financial Corporation ("Sandburg Financial") appeals

from an order of the United States District Court for the Southern District of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-40301

Texas (Case No. 2:10-cv-00280), affirming[1] the bankruptcy court's final judgment (Bankr. Adv. Proc. 98-21254-C-11).  Both the bankruptcy court and the district court issued detailed opinions.  See *In re American Rice, Inc.*, No. 98-21254-C-11, Dkt. No. 1494 (Bankr. S.D. Tex. April 27, 2010), *aff'd sub nom. In re Sandburg Financial Corp.*, No. 2:10-cv-00280, Dkt. No. 7 (S.D. Tex. Feb. 11, 2011). Specifically, Sandburg Financial challenges the district court's order as to the enforceability of certain contracts between Sandburg Financial and debtor-appellee American Rice, Inc. ("American Rice").  For the reasons stated herein, the district court's judgment is AFFIRMED.

## I.  Essential Facts and Procedural History

The underlying matter involves a 1988 commercial real estate transaction in California.  Sandburg Financial's predecessor-in-interest, Barrington Capital Corp. ("Barrington Capital"), contracted with Hansen foods for Barrington Capital to purchase Hansen's facility in Los Angeles County and lease it back to Hansen.   At the time, ERLY Industries, Inc. ("ERLY"), a very large foods company, was interested in purchasing Hansen and had loaned Hansen over $20 million.  In connection with and as a prerequisite to the real estate transaction, Barrington Capital and its lender, GMAC, required ERLY, several of its affiliates, as well as its chairman and Chief Executive Officer, Gerald Murphy, personally, to guarantee to pay Barrington Capital any damages incurred or judgments obtained in connection with the real estate transaction.  Sandburg Financial obtained a judgment against ERLY and entities related to American Rice, entered in State of California Superior Court on April 24, 1998 (*Sandburg Financial Corp. et al v. ERLY Industries, et al.*) (the "Judgment").  American Rice commenced its Chapter 11 bankruptcy on August 11, 1998 (the "Petition

---

[1] A district court has jurisdiction over a bankruptcy appeal under 28 U.S.C. § 158(a)(1), and in reviewing the findings of a bankruptcy court, a district court acts in an appellate capacity.  *See Perry v. Dearing*, 345 F.3d 303, 308–09 (5th Cir. 2003).

No. 11-40301

Date") in the United States Bankruptcy Court for the Southern District of Texas. On July 7, 1999, the bankruptcy court issued its order confirming American Rice's plan of reorganization pursuant to Chapter 11 ("Confirmation Order").

## A.     Contracts

Sandburg Financial seeks to collect approximately $19 million from American Rice, which it claims to be due based upon contracts entered into over the course of several years, both before and after American Rice filed for Chapter 11 bankruptcy.  These contracts fall into three categories:  (1) pre-petition contracts (prior to the Petition Date), (2) post-petition contracts (between the Petition Date and the Confirmation Order), and (3) post-confirmation contracts (after the Confirmation Order) – the only contracts relevant to the issue here.

### 1.  Post-Confirmation Order Covenant Not to Sue Contract

American Rice and related entities entered into a covenant not to sue contract with Sandburg Financial on August 9, 1999, after confirmation of the bankruptcy plan.  Under this contract, American Rice stated that it was a new contract to pay any new claims Sandburg Financial may have against American Rice.  In exchange, Sandburg Financial agreed not to sue or assert any new claims against American Rice and related entities prior to June 30, 2008, nor to do any discovery prior to that time.

### 2.  Post-Confirmation Order Indemnity and Release Contract

On November 22, 1999, American Rice and related entities entered into an indemnity and release contract with Sandburg Financial. This contract similarly provided that American Rice and related entities agreed and guaranteed to pay after June 30, 2008, any damages Sandburg Financial incurs and any judgment Sandburg Financial obtains.  American Rice also "reaffirmed" its guaranty to pay after June 30, 2008 all of the obligations of any of its related entities to Sandburg Financial.  In exchange, Sandburg Financial again agreed not to execute upon or enforce any judgment, not to enforce any guaranty

3

contracts, and not to sue or assert any claims against American Rice prior to June 30, 2008.

## B.     State Court Lawsuit

The agreed-upon tolling period for the enforcement of the Judgment ended on June 30, 2008. Thereafter, on October 23, 2009, Sandburg Financial filed suit in Texas state court against American Rice (the "Post Confirmation Complaint"), seeking to collect amounts allegedly due from American Rice, Rice Corporation of Haiti, Comet Rice of Puerto Rico, Inc., and Comet Ventures, Inc. under the Pre-Petition Contracts only, including amounts due under the Judgment.

## C.     Reopening of Chapter 11 Case and District Court Procedures

After Sandburg Financial filed the Post Confirmation Complaint, American Rice filed a motion on November 24, 2009 to reopen the Chapter 11 case and filed a "Motion for Order that Sandburg Financial Corporation Appear and Show Cause as to Why Sandburg Financial Should Not be Found in Contempt and Sanctioned for Violations of the Discharge Injunction." The district court granted the motions on November 24, 2009. Appellee later moved for summary judgment on the motion (on January 27, 2010), arguing that the Post Confirmation Complaint violated the district court's discharge injunction and Confirmation Order.

The district court heard the motion on March 8, 2010, and issued an opinion on April 27, 2010, finding that Sandburg Financial's Post Confirmation Complaint violated the discharge injunction and Confirmation Order. Specifically, the district court found: (a) Sandburg Financial's claim based on the pre-petition contracts and post-petition contracts was discharged by the Confirmation Order, (b) the post-petition contracts and post-confirmation contracts are unenforceable, and (c) the Post-Confirmation Complaint violates the court's discharge injunction.

No. 11-40301

The district court entered final judgment on August 10, 2010, finding that Sandburg Financial's claims were discharged during the bankruptcy, and that Sandburg Financial was permanently barred from pursuing the claims against American Rice.  The claims were dismissed with prejudice.

## II.  Issue on Appeal

Sandburg Financial argues that the two post-confirmation contracts were not discharged by the Confirmation Order of American Rice's reorganization plan, and are thus valid and enforceable, because the contracts represent new contracts supported by new and independent consideration.  Sandburg Financial does not appeal any findings with respect to the pre- or post-petition contracts. Therefore, the sole issue on appeal is whether the district court erred in finding the two post-confirmation contracts between Sandburg Financial and American Rice void and unenforceable, because  each of the contracts failed to comply with 11 U.S.C. § 524(c) of the United States Bankruptcy Code.

## III.  Standard of Review

This court has jurisdiction over appeals of "all final decisions of the district courts", including final judgments in bankruptcy appeals.  28 U.S.C. § 1291; *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992).  Fact findings of the district court and the bankruptcy court are reviewed under a clearly erroneous standard, and issues of law are reviewed *de novo.  U.S. ex rel. FCC v. GWI PCS 1*, Inc., 230 F.3d 788, 799-800 (5th Cir. 2000) (citing *In re Berryman Products*, Inc., 159 F.3d 941, 943 (5th Cir. 1998)).

## IV.  Analysis

The United States Bankruptcy Code, 11 U.S.C. § 524(c), governs the enforcement of a contract between a creditor and a debtor involving dischargeable debt (also known as a "reaffirmation contract"), [2] and states:

---

[2] The district court concluded that the debt at issue here (American Rice's guarantee of payment of the Judgment under the Pre- and Post-Petition Agreements) was dischargeable

No. 11-40301

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if-

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title [11 USCS § 727, 1141, 1228, or 1328];

(2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that--

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of--

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement;

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

(5) the provisions of subsection (d) of this section have been complied with; and

(6)    (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as--

(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor.

(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

---

and was in fact discharged.

No. 11-40301

"The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise contracts to repay dischargeable debts.  Because of the danger that creditors may coerce debtors into undesirable reaffirmation contracts, they are not favored under the Bankruptcy Code and strict compliance with the specific terms in Section 524 is mandatory.  A reaffirmation contract which does not comply fully with Section 524 is void and unenforceable." *Republic Bank, N.A. v. Getzoff (In re Getzoff)*, 180 B.R. 572, 180 B.R. 572, 574 (B.A.P. 9th Cir. 1995) (citations omitted); *Chase Auto. Fin., Inc. v. Kinion (In re Kinion)*, 207 F.3d 751, 756 (5th Cir. 2000) (reaffirmation contract "flawed" under 11 U.S.C. § 524(c) is "unenforceable").

Here, Sandburg Financial argues that the district court erred in finding the post-confirmation contracts to be unenforceable.  This court holds that the district court did not err in finding that the post-confirmation contracts failed to comply with the requirements of 11 U.S.C. § 524(c).  Specifically, (1) the post-confirmation contracts were not made before the granting of discharge, (2) the post-confirmation contracts do not contain the disclosures required by 11 U.S.C. § 524(c), and (3) the post-confirmation contracts were not filed with the court thus precluding enforcement pursuant to 11 U.S.C. § 524(c).  *See Kinion,* 207 F.3d at 756.

Sandburg Financial further argues that the post-confirmation contracts are new contracts, supported by new and independent consideration, rather than reaffirmation contracts.  Sandburg Financial cites to a few decisions to have found an exception to 11 U.S.C. § 524(c) for post-confirmation contracts supported by new and independent consideration, and thus considered such contracts to be enforceable.  *Watson v. Shandell (In re Watson)*, 192 B.R. 739 (B.A.P. 9th Cir. 1996); *In re Petersen*, 110 B.R. 946 (Bankr. D. Colo. 1990); *In re Button*, 18 B.R. 171 (Bankr. W.D.N.Y. 1982); *Minster State Bank v. Heirholzer*

*(In re Heirholzer)*, 170 B.R. 938 (Bank. N.D. Oh. 1994); *Antonino v. Kenny (In re Antonino)*, 241 B.R. 883 (Bankr. N.D. Ill. 1999).

However, the cases upon which Sandburg Financial relies have been widely and seriously questioned since their issuance. *See, e.g., Liptz & Roberts, Chtd. Pension Plan Trust v. Stevens (In re Stevens)*, 217 B.R. 757, 761 (Bankr. D. Md. 1998) ("[T]he *Heirholzer* court take[s] the opposite approach to § 524(c) than that which is intended by Congress"); *In re Zarro*, 268 B.R. 715, 722 (Bankr. S.D.N.Y. 2001) ("To the extent [creditor's] authorities suggest that a post-petition contract to pay a discharged debt is valid simply because the creditor offers something extra, I join the growing chorus that questions their correctness."); *In re Arnold*, 206 B.R. 560, 566 (Bankr. N.D. Ala. 1997) ("The Court believes [*Heirholzer*] and [*Button*] are wrong.").

Many courts have in fact considered and rejected the "new and independent consideration" exception. One court has stated, "[i]f the consideration for the [contract] is based, in whole or in part, on a dischargeable debt, then the contract must comply with § 524. Therefore, even if it could be argued that the [contract] was based upon new consideration, this Court finds that the [contract] was at least based in part upon the discharge debt and therefore must comply with § 524 to be valid." *In re Cruz*, 254 B.R. 801, 815 (Bankr. S.D.N.Y. 2000); *see also TD BankNorth, N.A. v. Ewing (In re Ewing)*, 365 B.R. 347, 350 (Bankr. D. Mass. 2007) ("[T]he forbearance contract . . . was a form of 'reaffirmation contract.' Such contracts, though they arise post-petition, are *not enforceable unless statutorily prescribed procedures are followed with respect to those contracts*.") (emphasis added). Another court has explained: "Section 524(c) is not concerned with the consideration that the debtor received; instead, *it invalidates non-complying contracts where any part of the consideration given by the debtor involves his promise to pay a discharged debt*. Every reaffirmation contract involves some element of new consideration. Otherwise, the debtor

No. 11-40301

would not agree to pay the discharged debt. If new consideration saved a non-complying reaffirmation contract, little would remain of the protection afforded by § 524(c)." *Zarro,* 268 B.R. at 720-21 (emphasis added) (citations omitted). The one Texas court to have discussed the exception and considered the cases upon which Sandburg Financial relies in fact declined to follow those cases. *Lindale Nat'l Bank v. Artzt*, 145 B.R. 866 (Bankr. E.D. Tex. 1992). That court reasoned, "[a]s enacted, § 524(c) is purposefully rigorous in application. This Court agrees . . . that supporting [creditor's] position would be counter to the policy goals of § 524(c), in protecting debtors from creditors and in many instances from their own improvident actions." *Id*. at 870.

Here, given the lack of authority in this court permitting enforcement of the post-confirmation contracts at issue under a new and independent consideration exception and the significant authority to the contrary, this court concludes that the post-confirmation contracts would be enforceable only upon compliance with 11 U.S.C. §524(c). The district court did not err when it required that the Post-Confirmation Contracts comply with 11 U.S.C. § 524(c). The district court properly noted that the Post-Confirmation Contracts purported to reaffirm American Rice's pre-confirmation debt, which was discharged, to Sandburg Financial. The district court correctly found that the post-confirmation contracts did not satisfy the requirements of 11 U.S.C. § 524(c).

Notwithstanding the lack of authority to support a "new and independent consideration" exception to 11 U.S.C. § 524(c), the district court also considered whether the post-confirmation contracts could be enforceable in light of such an exception, were it viable. Sandburg Financial argues that its new consideration was its contract to forbear on executing the Judgment against American Rice's subsidiary, Rice Haiti, since it was unclear whether Rice Haiti was an intended beneficiary of a pre-petition contract. As the district court correctly recognized,

9

No. 11-40301

Sandburg Financial's consideration in the post-confirmation contracts included the same promise to forbear on enforcement of the Judgment as contained in the previous contracts.

The district court did not err in concluding that the post-confirmation contracts were not supported by new and independent consideration. Sandburg Financial's argument relying upon the unenforceability of the pre-confirmation contracts must also be rejected, as it would essentially allow any post-confirmation contract to be enforceable under the proposed new and independent consideration exception, whenever pre-discharge contracts were declared unenforceable. These contracts would essentially be written on a clean slate, and would always be supported by new and independent consideration. In effect, Sandburg Financial's position, if this court accepted it, would greatly expand the scope of a new consideration exception, and greatly diminish the import of 11 U.S.C. § 524(c), which governs such reaffirmation contracts.

## V.  Conclusion

The district court did not err in finding the post-confirmation contracts void and unenforceable.  AFFIRMED.