**IN RE: NORTHERN NEW ENGLAND TELEPHONE OPERATIONS LLC, Debtor.**

**Case No. 09–16365 (CGM)**

United States Bankruptcy Court, S.D. New York.

February 11, 2014

Paul, Hastings, Janofsky & Walker LLP, Park Avenue Tower, 75 E. 55th Street, First Floor, New York, N.Y. 10022, Telephone: (212) 318–6000, Facsimile: (212) 319–4090, By: Luc A. Despins, James T. Grogan, Counsel to the Reorganized Debtors

Deputy City Solicitor, 41 Green Street, Concord, NH 03301, Telephone: (603) 225–8505, Facsimile: (603) 225–8558, By: James W. Kennedy (Admitted Pro Hac Vice), Counsel to the City of Concord

Chapter 11

## *MEMORANDUM DECISION DENYING THE CITY OF CONCORD'S MOTION FOR ALLOWANCE AND PAYMENT OF TAX CLAIMS*

CECELIA G. MORRIS, CHIEF UNITED STATES BANKRUPTCY JUDGE

Before the Court is the Motion of the City of Concord, New Hampshire (the "City") for Allowance and Payment of Tax Claims (the "Motion"). By the Motion, the City seeks payment of certain real property taxes assessed against New England Telephone Operations LLC ("New England Telco"), an affiliate of FairPoint Communications, Inc. ("FairPoint," and collectively with New England Telco and other affiliates, the "Debtors") during the 2009 tax year (the "Tax Claim"). For the reasons set forth below, the Court finds that the City was required to file a proof of claim for the Tax Claim. Since the City failed to timely do so and has not provided adequate justification for such failure, the Court holds that the City is not entitled to

payment of the Tax Claim. The Motion is hereby denied.

## JURISDICTION

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334, § 157(a), and the Amended Standing Order of Reference signed by Chief District Judge Loretta A. Preska dated January 31, 2012. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate).

## BACKGROUND

On October 26, 2009 (the "Petition Date"), each of the Debtors filed petitions for relief under chapter 11 of the United States Bankruptcy Code (the "Code"). On February 4, 2010, this Court entered an order establishing the deadline and procedures for filing proofs of claim in the Debtors' chapter 11 cases (the "Bar Date Order"). See Order Establishing Deadline, (No. 09–16335), ECF No. 568. The Bar Date Order established April 26, 2010 as the last date by which governmental units (as defined in § 101(27) of the Code) could file proofs of claims (the "Governmental Bar Date"). See id. ¶ 7.

On January 13, 2011, this Court entered an order (the "Confirmation Order") confirming the Debtors' third amended joint plan of reorganization (the "Plan"). See Order Confirming Third Am. Plan, (No. 09–16335), ECF No. 2113; Debtors' Third Am. Joint Plan, (No. 09–16335), ECF No. 2013. The Plan became effective and was substantially consummated according to its terms on January 24, 2011 (the "Effective Date"). Except for the case of New Eng-land Telco, all of the Debtors' cases have been fully-administered and closed.

The Plan provides, in relevant part, that "the property of the Estate and FairPoint shall revest in Reorganized FairPoint"[1] and that

As of the Effective Date, *all property of FairPoint and Reorganized FairPoint shall be free and clear of all Claims, Liens and interests,* except as specifically provided in the Plan, the Confirmation Order, or the New Credit Agreement.

Plan § 8.9 (emphasis added). Both the Plan and the Confirmation Order required all administrative expense claimants to make a request for payment by March 25, 2011, the sixtieth day after the Effective Date (the "Administrative Expense Bar Date"). See Plan § 3.1; Confirmation Order ¶ 48. The City was served with notice of entry of the Confirmation Order, which also described the Administrative Expense Bar Date. See Ntc. of Entry of Order, (No. 09–16335), ECF No. 2118.

New England Telco owns a number of parcels of real property located within the taxing jurisdiction of the City. According to the City, real property taxes for each tax year are assessed as of April 1 of that year. See Hr'g Tr. 10:15–16. The City sends property tax bills on a quarterly basis, with the first two bills issued in July and October of the tax year, and the second two bills issued in January and March of the following calendar year. The Tax Claim at issue seeks payment of unpaid 2009 property taxes on six properties[2] owned by New England Telco in the City. For the 2009 tax year, the City sent property tax bills in July and October of 2009

---

1. The Plan defines "FairPoint" and "Reorganized FairPoint" to include New England Telco. See Plan, §§ 1.53, 1.122.

2. The six properties, identified by address within the City, are: (1) 12 South Street; (2) Hopkinton Road; (3) 445 Mountain Road; (4) 64 Regional Drive; (5) 18 Charles Street; and (6) Locke Road. See Hr'g Tr. 13:4–7, 14:3–18.

and January and March of 2010. No one disputes that the July and October 2009 tax bills were paid. *See* Hr'g Tr. 6:19–20 Jan. 9, 2014, (No. 09–16365), ECF No. 30. The only bills at issue are the January and March bills, which form the basis of the instant Tax Claim.

Altogether, the City timely filed a total of twenty-one proofs of claim relating to property taxes, water charges, and sewage charges associated with various properties owned by the Debtors. Among those proofs of claim were proofs of claim for the July and October bills for the six properties at issue. *See* FairPoint's Obj., Ex. B, (No. 09–16365), ECF No. 22.[3] The proofs of claim with respect to two of those properties were unopposed and paid in full. *See* Hr'g Tr. 30:22–24, 32:11–18. The claims relating to the other four properties were subject to the Debtors' Eighty–Eighth Omnibus Objection to Claims (the "88th Omnibus Claims Objection"). By order dated December 8, 2011 (the "December 8 Order"), this Court granted the 88th Omnibus Claims Objection, thereby reducing and allowing the remaining four claims as priority claims. *See* Order Granting FairPoint's 88th Omnibus Objection to Claims, (No. 09–16335), ECF No. 2481.

As indicated above, the City did not timely file a proof of claim for the January and March 2010 tax bills, which were due for the 2009 tax year. *See* Mot. ¶ 11. Instead, it filed the instant Motion on October 11, 2013. New England Telco filed its objection on October 25, 2013, and the City filed its reply on November 7, 2013. A hearing was held before the Court on

January 9, 2014. The City filed a post-hearing statement on January 13, 2014.

## *DISCUSSION*

The City argues that it did not need to file a proof of claim, as (i) it held a lien securing the Tax Claim that rode through the bankruptcy unaffected and (ii) the Tax Claim is an administrative expense claim for which it did not need to file a proof of claim. Alternatively, assuming that a proof of claim was necessary, the City posits that it has satisfied the factors for excusable neglect under *Pioneer* to permit it to file a late proof of claim.

The Court finds the City's arguments for allowance and payment of the Tax Claim unpersuasive. Its Motion is denied.

**I. The City's Contention That Its Tax Lien Survived The Bankruptcy Is Erroneous.**

The City argues that it held a tax lien that survived New England Telco's bankruptcy. As a result of this tax lien, the City contends that it did not need to file a proof of claim. The Court finds this argument unconvincing. The tax lien was extinguished under § 1141(c) of the Code ( 1141(c)).

 As a general rule, liens pass through the bankruptcy process unaffected. *See* 11 U.S.C. § 506; *see also Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Section 1141(c) provides an exception to this general rule:

> [E]xcept as otherwise provided in the plan or in the order confirming the plan,

---

3. Specifically, (1) Claim 379 related to the 12 South Street property; (2) Claim 381 related to the Hopkinton Road property; (3) Claim 375 related to the 445 Mountain Road property; (4) Claim 378 related to the 64 Regional Drive property; (5) Claim 367 related to the 18 Charles Street property; (6) and Claim 371 related to the Locke Road property. *See* Hr'g Tr. 13:4–7, 14:3–18. As of November 7, 2013, the total amount due on these six properties, including cost and statutory interest of 18%, was $103,075.39. *See* Hr'g Tr. 19:23–15, 21:10–11.

after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(c). In *WorldCom*, the court provided four factors that must be satisfied in order for a lien to be extinguished under § 1141(c): (1) the plan must be confirmed; (2) the property that is subject to the lien must be "dealt with" by the plan; (3) the lienholder must participate in the reorganization proceeding; and (4) the plan must not preserve the lien. *See In re WorldCom, Inc.*, 382 B.R. 610, 622 (Bankr.S.D.N.Y.2008), *aff'd*, 2011 WL 1496378 (S.D.N.Y. Apr. 19, 2011), *aff'd*, 466 Fed.Appx. 28 (2d Cir.2012). It is undisputed that factors (1) and (4) have been met: this Court confirmed the Plan via the Confirmation Order and the Plan did not preserve the City's lien. Only whether factors (2) and (3) have been satisfied is in dispute. *See* City of Concord New Hampshire's Reply p. 5, (No. 09–16365), ECF No. 25. The Court finds that they have: the Plan "dealt with" the Debtors' property that is subject to the Tax Claim, and the City participated in New England Telco's reorganization proceeding.

### A. The Debtors' Property Was "Dealt With" by the Plan (Factor 2)

■ New England Telco's property that was subject to the City's tax lien was "dealt with" in the Plan. Specifically, § 8.9 of the Plan provides that "the property of the Estate and FairPoint shall revest in Reorganized FairPoint" and that "[a]s of the Effective Date, all property of FairPoint and Reorganized FairPoint shall be free and clear of all Claims, Liens and interests, except as specifically provided in the Plan, the Confirmation Order, or the New Credit Agreement." Plan § 8.9.

The City argues that § 8.9 of the Plan is overly broad, and that lien extinguishment can be accomplished only where the Plan explicitly deals with the property in question. The *WorldCom* court dealt with a similarly broad plan provision, which stated that "all property of the estates of the Debtors shall vest in the Reorganized Debtors free and clear of all Claims, Liens . . . ." *In re WorldCom, Inc.*, 382 B.R. at 621. That court found that this language in the plan "dealt with" the debtors' property for purposes of lien extinguishment under § 1141(c). *See id.* at 622. Here, § 8.9 of the Plan contains nearly identical language. Accordingly, the Court holds that the Debtors' Plan in this case "deals with" New England Telco's property for purposes of § 1141(c).

### B. The City Participated in the Debtors' Reorganization Proceeding (Factor 3)

■ Courts are divided over the precise level of participation that is required for a creditor's lien to be extinguished under a Plan, ranging from merely receiving notice of the plan and an opportunity to object to requiring more active participation in the reorganization proceeding. *Compare In re Reg'l Bldg. Sys., Inc.*, 251 B.R. 274, 287 (Bankr.D.Md.2000) (finding that the only participation necessary is that the creditor receive notice of the plan and an opportunity to object) *with In re Penrod*, 50 F.3d 459, 462 (7th Cir.1995) (requiring that secured creditor had filed a proof of claim in the bankruptcy proceeding). Here, the City clearly participated in the reorganization proceeding. Most significantly, the City timely filed twenty-one proofs of claim relating to property taxes, as well as water and sewage charges associated with properties owned by the Debtors. *See* Obj., Ex. B. Of these twenty-one proofs of claim filed by the City, six relate to the same New England Telco properties subject to the instant Tax Claim and are

asserted for the same 2009 tax year. *See id.*

The City also participated in New England Telco's reorganization proceeding in other ways. For example, the City litigated the 88th Omnibus Claims Objection, which this Court decided by the December 8 Order. The December 8 Order reduced and allowed four of the City's six proofs of claims relating to the same New England Telco properties subject to the Tax Claim. *See* December 8 Order, Ex. E. The City's proofs of claim relating to the remaining two properties were unopposed and paid in full. The City also litigated an estimation motion relating to certain of its property tax claims against the Debtors. *See* City of Concord New Hampshire's Objection To FairPoint's First Omnibus Mot. To Estimate the Maximum Allowed Amount of Proofs of Claim Pursuant to Bankruptcy Code Sections 105(a) and 502(c), (No. 09–16335), ECF No. 1616.

The above notwithstanding, City argues that the participation prong has not been fulfilled. It contends that although the City participated in the Debtors' reorganization for purposes of the first half of the tax year, it did not for purposes of the second half. *See* Hr'g Tr., 34:10–12, 35:18–25 (citing *Greater Am. Land Res., Inc. v. Town of Brick, N.J.,* 2012 WL 1831563 (D.N.J. May 17, 2012)). The City's reliance on *Greater American Land Resources* is misplaced. In that case, the creditor filed a proof of claim relating to only one of two properties. *See Greater Am. Land Res., Inc.,* 2012 WL 1831563, at *6. That court found that the creditor only participated in the reorganization proceeding with respect to the property for which it filed a proof of claim. *See id.* Here, to the contrary, the City timely filed proofs of claim for all six of the properties subject to the Tax Claim. Considering this fact, the City cannot now claim non-participation

for the second half of the 2009 tax year when it filed proofs of claim for these same six properties for the first half of the 2009 tax year. In light of this, combined with the other aforementioned actions taken by the City throughout the bankruptcy case, the Court holds that the City participated in the bankruptcy proceedings. *See Universal Suppliers v. Reg'l Bldg. Sys., Inc. (In re Reg'l Bldg. Sys., Inc.),* 254 F.3d 528, 530 (4th Cir.2001) (finding creditor participated in the bankruptcy proceedings by filing a proof of claim, serving on an unsecured creditors committee, and discussing its claim with that committee's counsel).

As explained above, all of the factors under *WorldCom* have been satisfied in order to extinguish the City's tax lien under § 1141(c). The City is not entitled to payment on the Tax Claim without having filed a timely proof of claim.

## II. The City's Contention That The Tax Claim Constitutes an Administrative Expense Under § 503(b)(1)(B) of the Code is Likewise Unpersuasive.

The City's next explanation for its failure to file a proof of claim is that the Tax Claim falls within the Code's exception permitting governmental units to forego filing proofs of claim for certain administrative expense claims. This argument is unpersuasive. For the reasons set forth below, the Court holds that the Tax Claim is a prepetition claim, not a post-petition administrative expense claim.

As a general rule, administrative expense claimants must file a proof of claim as a prerequisite to allowance of administrative expense claims. *See* 11 U.S.C. § 503(a). Section 503(b)(1)(D) of the Code excepts governmental units from this filing requirement for certain types of expenses, including those described in § 503(b)(1)(B) of the Code. Section

503(b)(1)(B) of the Code provides administrative priority for all taxes except for those specified under § 507(a)(8) of the Code that are "incurred by the estate." *See* 11 U.S.C. § 503(b)(1)(B). Accordingly, for a tax claim to be given administrative priority under § 503(b)(1)(B) and thereby fall under § 503(b)(1)(D)'s exception from filing a proof of claim, the Court must find that the tax was incurred by the estate. State law determines when a state tax is incurred. *See Marion Cnty. Treasurer v. Blue Lustre Prods., Inc. (In re Blue Lustre Prods., Inc.),* 214 B.R. 188, 189 (S.D.Ind.1997) (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Under New Hampshire state law, "[t]he tax for the whole year is an obligation of the owner as of April 1 and the tax becomes due and payable as of that date." *Town of Gilford v. State Tax Comm'n,* 108 N.H. 167, 229 A.2d 691, 693 (1967); *see also* N.H. Rev. Stat. § 76:2 ("The property tax year shall be April 1 to March 31 and all property taxes shall be assessed on the inventory taken in April of that year...."). In New Hampshire, ownership of property on April 1 triggers the obligation of the owner to pay taxes for that year. *See* N.H. Rev. Stat. § 76:10; *see also Town of Gilford,* 229 A.2d at 693.

■■ The Tax Claim arises from a prepetition tax not "incurred by the estate." New England Telco incurred the Tax Claim on April 1, 2009, months before the Petition Date in October of 2009, by virtue of its ownership of the six relevant properties on that date. In a similar situation, the court in *In re BH S & B Holdings* found that a property tax claim arose when it became an obligation of the property owner. *In re BH S & B Holdings LLC,* 435 B.R. 153, 165 (Bankr.S.D.N.Y.2010). In that case, the court determined that the tax claim became an obligation of the prop-

erty owner when a tax lien attaches. *See id.* Relevant state law provided that "[o]n January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property...." *Id.* The court determined that the event giving rise to the tax claim occurred on January 1. *Id.* Similarly, New Hampshire law provides that a tax lien arises on April 1 of each year to secure property taxes and that property taxes in the City are assessed against the owner of record on April 1. *See Gaff v. Town of Pembroke (In re Doolan),* 447 B.R. 51, 55 (Bankr.D.N.H. 2011); *see also First NH Bank v. Town of Windham,* 138 N.H. 319, 639 A.2d 1089, 1091 (1994). Thus, the Tax Claim arose and was incurred by New England Telco as owner of the properties prepetition on April 1, 2009.

■ The City argues that New Hampshire Revenue Statute § 76:15–aa changes this result. *See* Mot. ¶ 13, 17. This statute allows "[a]ny city or town which has adopted an optional fiscal year" to "adopt a system for quarterly billing and collection of taxes." N.H. Rev.Stat. § 76:15–aa. The City argues that the tax bills for the second half of the 2009 tax year were not due until January and March of 2010, meaning that the portion of the 2009 taxes comprising the Tax Claim was incurred post-petition. *See* Mot. ¶ 17. This argument notwithstanding, "courts addressing this issue have held that it is the date that property taxes are incurred, rather than the date that taxes are due, that determines whether taxes qualify as administrative expenses." *See Marion Cnty. Treasurer,* 214 B.R. at 190. As discussed above, the Tax Claim became an obligation of New England Telco as the property owner on April 1, 2009. Revealingly, the City admits to notifying New England Telco of the Tax Claim as early as July 1,

2009, months before the January and March bills became due. Mot. ¶ 24. In light of this, the Tax Claim was incurred prepetition and is not an administrative expense under § 503(b)(1)(B).

■ Even assuming that the Tax Claim was an administrative expense claim, "the 503(b)(1)(D) exception does not apply where the court has entered an administrative bar date order applicable to governmental units." *In re BH S & B,* 435 B.R. at 164–65. Here, the Administrative Expense Bar Date applied to all parties, with no exception for governmental units. *See id.* at 165 (finding that where "the Administrative Bar Date Order applies generally to 'all parties,' with certain exceptions that do not include any taxing authorities ..., the Tax Authorities are required to comply with it regardless of section 503(b)(1)(D) of the Bankruptcy Code"). Accordingly, assuming that the Tax Claim was an administrative expense claim under § 503(b)(1)(B), in light of the Administrative Expense Bar Date, the City was required to file a proof of claim.

In short, both of the City's arguments that attempt to explain why it did not need to file a proof of claim are unpersuasive.

### III. The City's Contention That It Has Demonstrated Excusable Neglect Is Also Unpersuasive.

■ The City posits that in the event it needed to timely file a proof of claim, it has demonstrated excusable neglect sufficient to justify its failure to do so. The Court disagrees.

■ Federal Rule of Bankruptcy Procedure 9006(b)(1) ("Bankruptcy Rule 9006(b)(1)") permits a court to extend a party's time for performing an act under certain circumstances. *See* Fed. R. Bankr.P. 9006(b)(1). Where the time for performance of the act has passed, the court may only extend the time period "where the failure to act was the result of excusable neglect." *Id.* In *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,* the Supreme Court set forth four factors for courts to consider in determining whether excusable neglect exists: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *See* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In the Second Circuit, the reason for the delay is the most important of these factors. *See Williams v. KFC Nat'l Mgmt. Co.,* 391 F.3d 411, 415–416 (2d Cir.2004); *In re Musicland Holding Corp.,* 356 B.R. 603, 607 (Bankr. S.D.N.Y.2006). The burden of proving excusable neglect is on the City as the movant seeking to file a late proof of claim. *See Michigan Self–Insurers' Sec. Fund v. DPH Holdings Corp. (In re DPH Holdings Corp.),* 434 B.R. 77, 82 (S.D.N.Y.2010) ("The late-filing creditor carries the burden of proving excusable neglect."). After considering these factors, the Court concludes that the City has not established excusable neglect for its failure to timely file a proof of claim.

### A. The Danger of Prejudice to the Debtors (Factor 1)

This *Pioneer* factor weighs in favor of New England Telco. In determining whether danger of prejudice to the debtor exists, courts ordinarily consider a variety of factors, including the disruptive effect that the late filing would have on a plan close to completion and whether allowing a late claim might precipitate a flood of late filed claims. *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),* 419 F.3d 115, 130 (2d Cir.

2005); *see also In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 (Bankr. S.D.N.Y.2010) (finding that "[t]he prejudice factor calls for consideration of the overall negative effect, if any, on a debtor and its estate resulting from allowing a late claim"). Courts have found prejudice to the debtor where "a significant amount of the consideration reserved for holders of general unsecured claims already has been distributed." *See In re Dana Corp.*, 2008 WL 2885901, at *7 (Bankr.S.D.N.Y. July 23, 2008).

Here, the Court concludes that the Debtors would be prejudiced by the late allowance of the Tax Claim. The Debtors have confirmed a plan under which all timely filed claims against the Debtors have been administered and all distributions have been made. The Debtors were prepared to close the case of New England Telco, the Debtors' last remaining open case. As the court stated in *Enron*, "[i]t can be presumed in a case of this size ... that there are other similarly-situated potential claimants to [the City]." *In re Enron Corp.*, 2003 WL 1889042, at *5 (Bankr. S.D.N.Y. Apr. 8, 2003). Specifically, the Debtors operated in eighteen states. *See* Hr'g Tr. 47:11–12. The Court agrees with New England Telco's contention that "we could have ... taxing authorities inundating the Court with new requests for payment, filing tax liens and asserting foreclosures all over the country." *Id.* at 47:17–19; *see also Enron*, 2003 WL 1889042, at *5 ("Any deluge of motions seeking similar relief would prejudice the Debtors' reorganization process.").

Notwithstanding the above, the City argues that the Court should consider the small size of the Tax Claim in comparison to the Debtors' aggregate estates, as well as the fact that the City gave advanced notice to the Debtors of the Tax Claim. *See* Mot. ¶ 24. These considerations do not change the Court's conclusion. Given the late stage of the Debtors' bankruptcy cases, the Court is unconvinced that these factors would tip the analysis here in the City's favor. *See Enron*, 2003 WL 1889042, at *5 (finding "genuine" prejudice where creditor moved to file untimely proof of claim at a late stage in the debtors' bankruptcy cases even though the claim was relatively small).

Accordingly, this factor weighs in favor of New England Telco.

## B. Length of the Delay and its Potential Impact on Judicial Proceedings (Factor 2)

This *Pioneer* factor militates in favor of New England Telco. This case commenced over four years ago, the Governmental Bar Date passed three and a half years ago, the Plan was confirmed nearly three years ago, and the Administrative Expense Bar Date passed two and a half years ago. *See Enron*, 419 F.3d at 127–30 (upholding bankruptcy court's determination that even a month delay was unreasonable). The Debtors are prepared to close this case, as all timely filed claims against the Debtors have been fully administered and distributions have been made. Allowing the Tax Claim would further delay these proceedings, especially given the risk that doing so would encourage other taxing authorities to file late claims.

## C. Reason for the Delay, Including Whether it was in the Reasonable Control of the Movant (Factor 3)

This *Pioneer* factor, which is the most important in the Second Circuit, also weighs in favor of New England Telco. *See Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d at 415–16, While admitting that its delay in filing its proof of claim was within its control, the City contends that its belief that it was not required to file a proof of claim constitutes mere inadvertence and mistake. *See* Mot. ¶ 27; *see also* Hr'g Tr.

41:7–10 ("The City in good faith thought that this was a post-petition debt owed and believed that it could not file a proof of claim for the March and January dates that arose after the bankruptcy was filed."). "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect...." *Pioneer*, 507 U.S. at 392, 113 S.Ct. 1489. Twenty of the other twenty-one proofs of claim that the City timely filed against the Debtors arose from the Debtors' non-payment of real property taxes. More specifically, six of these proofs of claim relate to the same properties and the same tax year as the Tax Claim. The City offers no persuasive justification as to why it failed to file a proof of claim for the Tax Claim when it did so for these other claims. Instead, the City contends that the delay "resulted from the City's good faith efforts to cooperate towards a consensual resolution" of the Tax Claim. *See* Mot. ¶ 28. Even if the City believed that the Tax Claim would be consensually resolved, nothing prevented it from filing a proof of claim for the Tax Claim, just as it did for its other twenty-one claims. *See BH S & B Holdings*, 435 B.R. at 166 (noting that "[t]ax claimants regularly file estimated claims in bankruptcy cases to comply with bar date orders.").

This factor likewise weighs in favor of New England Telco.

### D. Whether the Movant Acted in Good Faith (Factor 4)

The last *Pioneer* factor does not favor either party. Although the Debtors aver that the City's arguments are "disingenuous at best," the Court is not prepared to conclude on the record before it that the City failed to act in good faith. *See* Objection ¶ 27. The above notwithstanding, the other three *Pioneer* factors all heavily weigh in favor of the Debtors. *See In re*

*Dana Corp.*, 2008 WL 2885901, at \*7 (holding that movant failed to establish excusable neglect even though movant acted in good faith where other three factors weighed in favor of the debtors). Thus, the City has not met its burden of demonstrating excusable neglect for its failure to file a proof of claim for the Tax Claim.

Ultimately, the City was required to timely file a proof of claim for the Tax Claim. It was remiss in doing so. Accordingly, the City is not entitled to seek the allowance Tax Claim, and cannot seek payment on account of it.

## CONCLUSION

For the foregoing reasons, the Motion is denied. Counsel for the Debtors is directed to submit an order consistent with this memorandum decision.